**Willie C. HILL, on behalf of himself individually and on behalf of the Estate of Tanya G. Hill and Tanya G. Hill's next of kin, her minor children, Plaintiff–Appellant,**

v.

**Albert M. NICODEMUS; Barbara Herron, Defendants–Appellees,**

**and**

**Clarke, Frederick, Winchester Regional Jail Board; County of Clarke; Dale A. Gardner; C. Ratcliff; John Doe, I, Defendants.**

No. 91–1634.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1992.

Decided Nov. 16, 1992.

of punitive damages constitute true punishment.

**988**

Nina Jean Ginsberg, Dimuro, Ginsberg & Lieberman, P.C., Alexandria, Va. (argued), for plaintiff-appellant.

Colin J. Steuart Thomas, III, J. Ross Newell, III, Timberlake, Smith, Thomas & Moses, P.C., Staunton, Va. (argued), for defendants-appellees.

Before PHILLIPS, Circuit Judge, SPROUSE, Senior Circuit Judge, and KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.

OPINION

FRANK A. KAUFMAN, Senior District Judge:

On November 6, 1987, Tanya Hill was arrested and placed in pretrial detention in the Clarke County, Virginia jail. On that same day, at approximately 4:00 p.m., she committed suicide. Subsequently, Willie Hill, as administrator of Tanya Hill's estate, instituted this case against Sheriff Albert Nicodemus and Matron Barbara Herron and others, alleging violations of the Federal Civil Rights Act, 42 U.S.C. § 1983, and the Virginia Wrongful Death Act, Va.Ann.Code § 8.01–50 (Michie 1984). The district court granted partial summary judgment for defendants as to the Wrongful Death claim and adopted, for trial purposes, the constitutional standard of "deliberate indifference" with respect to the § 1983 claim. At trial, the jury found for defendants in connection with the § 1983 claim and judgment for defendants was accordingly entered by the district court. 755 F.Supp. 692 (W.D.Va.1991).

Herein, Willie Hill appeals both the district court's grant of summary judgment as to his wrongful death claim and its instruction to the jury concerning the "deliberate indifference" standard. Hill also contends that certain comments by the trial judge, in the jury's presence, during trial, so prejudiced him that he was denied a fair trial. For the reasons discussed below we affirm.

I.

On November 6, 1987, Tanya Hill was arrested and taken to the Clarke County Jail for processing as a pretrial detainee by Officer Shelton of the Winchester Police Department. After her appearance before a state court magistrate, upon learning that she would be held without bond, Hill became distraught. Officer Shelton observed that she was crying and sobbing.

At the jail, at approximately 10:45 a.m., Matron Barbara Herron took custody of Hill. Herron completed an initial intake and medical screening form on which she noted that Hill was "crying, wringing her hands and carrying on." After serving

lunch and medication to other prisoners, Herron completed a medical data sheet on Hill. In response to Herron's questions, Hill told Herron that Hill had previously been in a psychiatric hospital and that Hill had twice tried to commit suicide by means of an overdose of pills. Hill also informed Herron that Hill had taken cocaine and PCP the previous day and needed to talk to someone. Herron told Hill that she would call Northwestern Mental Clinic after Herron completed the rest of the paperwork. Herron states that she did not consider Hill a suicide risk at this time.

At approximately 11:55 a.m. Herron placed Hill in a cell. She gave Hill linen, a toothbrush, and a glass. Herron also supplied Hill with cigarettes, served her lunch, and permitted her to talk with her father and her attorney on the telephone. Because Hill asked not to be put in with anyone else, Herron placed Hill in an empty cell block. Soon thereafter Herron was forced to enter Hill's cell in order to remove a plastic spoon with which Hill was apparently attempting to slit her wrist. Subsequently, Herron entered the cell to prevent Hill from "beating her head against the wall."

At approximately 1:50 p.m. Herron called the Northwestern Mental Clinic and reported that "they had an inmate that needed to be seen, that she was suicidal or claiming to be, and was crying, very hysterical, and that earlier in the day [she] found her trying to cut her wrist with a spoon." In response to a question from the Clinic staffer who took the call, Herron relayed the information about Hill's drug use of the day before. In response to a further inquiry from the staffer about whether she had taken suicide precautions, Herron replied that they had taken away the spoon. She was then informed that no one from the Clinic would be available until approximately 4:00 p.m.

Matron Herron checked on Hill intermittently throughout the afternoon, and at 3:50 p.m. states that she saw her lying on her bed, apparently asleep. At approximately 4:00 p.m., however, Herron found Hill hanging from the cell bars by a bed-sheet. By the time that Herron, with the assistance of other jail personnel, managed to untie the sheet and release her, Hill was dead.

## II.

The district court held that since Tanya Hill had committed suicide, and suicide under Virginia law is an immoral or unlawful act, the wrongful death claim was barred as a matter of law. Appellant does not challenge the proposition that Virginia law bars recovery in an action under Virginia's wrongful death statute when the deceased engages in an immoral or illegal act. Rather, appellant contends that suicide, in and of itself, is not an immoral or illegal act, and also that Tanya Hill did not commit suicide since she was not of sound mind.

Virginia's highest court, in *Wackwitz v. Roy,* 244 Va. 60, 418 S.E.2d 861 (1992), has, since oral argument in this appeal, visited the issue of whether suicide is an immoral or illegal act. In that case, the administrator of Wackwitz's estate filed a wrongful death action. Wackwitz had committed suicide. The court's inquiry focused on whether "the plaintiff's decedent, in taking his own life, engaged in an immoral or unlawful act that bars a recovery by the plaintiff." *Id.* 418 S.E.2d at 864. That court answered the question in the affirmative, and in so doing wrote: "It is well settled that, as a general rule, 'a party who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequences of that act.'" *Id.* 418 S.E.2d at 864 (quoting *Miller v. Bennett,* 190 Va. 162, 56 S.E.2d 217, 218 (1949)). That court also stated that "'consent or participation in an immoral or unlawful act by plaintiff precludes recovery for injuries sustained as a result of [such a tortious] act.'" *Id.* (quoting *Miller,* 56 S.E.2d at 219). In so holding, the Supreme Court of Virginia reaffirmed the rule which it had stated in *Zysk v. Zysk,* 239 Va. 32, 404 S.E.2d 721, 722 (1990).

██ Having so decided, Virginia's highest court then reached the question of whether suicide is an illegal or immoral act

under Virginia law. By Virginia statute "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Va.Code Ann. § 1–10 (Michie 1987). *See Wackwitz*, 418 S.E.2d at 864. Under the common law of England, suicide was a felony and was punished " 'by a forfeiture of all [the person's] goods and chattels to the King.' " *Id.* (quoting 4 William Blackstone, *Commentaries* *190). Absent clear legislative intent on the part of the General Assembly to abrogate the common law of England, that law remains in full force and effect in the Commonwealth of Virginia. *See id.*

■ Virginia's legislature has enacted legislation which provides that "[n]o suicide ... shall work a corruption of blood or 'forfeiture of estate.' " Va.Code Ann. § 55–4 (Michie 1986). Analyzing that statute, the Supreme Court of Virginia concluded that, "although the General Assembly has rescinded the punishment for suicide, it has not decriminalized the act. Suicide, therefore, remains a common law crime in Virginia...." *Wackwitz*, 418 S.E.2d at 864. Since suicide is an illegal act, it is a *per se* bar to a wrongful death claim. Accordingly, if Tanya Hill committed suicide, appellant may not prevail with regard to his state law claim.

Appellant herein raises the claim that Tanya Hill was not of sound mind at the time she took her life, and therefore could not have committed suicide. Both the common law and the modern definitions of suicide subscribed to by the court in *Wackwitz* require that a person taking her own life "be of years of discretion, and in [her] senses. *Wackwitz*, 418 S.E.2d at 864–65 (quoting 5 William Blackstone, *Commentaries* *189). A person is of "sound mind" only if competent and sane. The term "insane" refers to one who is, at a given time, an " 'idiot, lunatic, *non compos mentis* or deranged.' " *Fines v. Kendrick*, 219 Va. 1084, 254 S.E.2d 108, 110 (1979) (quoting Va.Code Ann. § 1–13.11 (Michie 1987)).

■ Appellant in this case did not raise the issue of insanity in response to appellees' successful motion for summary judgment, or at any time prior to this appeal. Indeed, during the trial, appellant expressly disclaimed any contention of insanity. Having taken that position in the court below, appellant cannot now raise the issue of insanity for the first time on appeal. See 10 Charles A. Wright et al., *Federal Practice & Procedure* § 2716 at 651–54 (1983). Furthermore, in any event, a person is presumed sane unless evidence is produced to show otherwise. *Nelms v. Nelms*, 236 Va. 281, 374 S.E.2d 4, 8 (1988) (quoting *Wallen v. Wallen*, 107 Va. 131, 57 S.E. 596, 598–99 (1907)); *Fines*, 254 S.E.2d 108; *Jones v. Commonwealth*, 202 Va. 236, 117 S.E.2d 67 (1960). Appellant has neither produced nor proffered any such evidence. Thus, this court must consider Tanya Hill to have been sane at the time she took her own life. Therefore, we conclude that Ms. Hill was able to and did commit suicide, and that, as a result, appellant's wrongful death claim is barred under applicable Virginia law, as Judge Michael determined below.

### III.

In charging the jury in connection with appellant's § 1983 claim, the district court adopted the standard of "deliberate indifference" with respect to the level of care due a pretrial detainee under the due process clause of the fourteenth amendment. Appellant timely objected to that instruction, contending that the correct standard was either "gross negligence" or "recklessness."

■ Because Tanya Hill was a pretrial detainee and not a convicted prisoner at the time of the alleged denial of medical care, the standard of care is governed by the due process clause of the fourteenth amendment rather than the eighth amendment's prohibition against cruel and unusual punishment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *see Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct.

1861, 1873 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977) ("Eighth Amendment scrutiny is appropriate only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). While a convicted prisoner is entitled to protection only against "cruel and unusual" punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description. *City of Revere,* 463 U.S. at 244, 103 S.Ct. at 2983; *see Bell,* 441 U.S. at 535–37 & n. 16, 99 S.Ct. at 1871–73 & n. 16. However, not every hardship encountered during pretrial detention amounts to "punishment" in the constitutional sense. *See id.* at 537, 99 S.Ct. at 1873. In order to establish that a particular condition or restriction of detention constitutes constitutionally impermissible "punishment" a detainee must show either 1) an "expressed intent" to punish or 2) a lack of a reasonable relationship "to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred." *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir.1988) (citing *Bell v. Wolfish,* 441 U.S. at 538–40, 99 S.Ct. at 1873–75). In this context, the due process clause mandates the provision of medical care to detainees who require it. Further, in that framework, due process calls for the taking of appropriate steps to protect detainees who manifest suicidal intent. *See Buffington v. Baltimore County,* 913 F.2d 113, 120 (4th Cir.1990), *reh'g denied, en banc; cert. denied, Buffington v. Baltimore County,* —— U.S. ——, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991).

"[T]he precise scope of this obligation [to provide medical care] is unclear." *Martin v. Gentile,* 849 F.2d at 871. However, "[t]he due process rights of a pretrial detainee are *at least* as great as the eighth amendment protections available to the convicted prisoner." *Id.* at 870 (emphasis supplied). The questions before us today are whether a pretrial detainee's due process rights are not merely "as great," but are, in fact, greater than the eighth amendment protection due a convicted prisoner, and, in that light, whether the district court erred in instructing the jury to apply the eighth amendment's "deliberate indifference" test.

In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court, when it last visited the issue, concluded that in that case it did not need to formulate the precise standard of medical care owed to a pretrial detainee, *Id.* at 388 n. 8, 109 S.Ct. at 1205 n. 8 (noting that in *Revere,* 463 U.S. at 243–45, 103 S.Ct. at 2982–84, "we reserved decision on the question whether something less than the Eighth Amendment's 'deliberate indifference' test may be applicable in claims by [pretrial] detainees asserting violations of their due process right to medical care while in custody."). Thus, to date, the Supreme Court has not established the specific standard governing the § 1983 jury instruction in that case. However, this Circuit has so done. In *Gordon v. Kidd,* 971 F.2d 1087 (4th Cir.1992), Senior Judge Butzner wrote:

> The law of this circuit governing § 1983 actions arising out of jail suicides is clear. Prison officials violate the civil rights of inmates when they display "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.

*Id.* at 1094. We note that other Circuits which have considered this question appear to have taken just about the same position.* Accordingly, we find that the trial

---

* *See, e.g., Rhyne v. Henderson County,* 973 F.2d 386 (5th Cir.1992) (in which the majority opinion seems to indicate (at 391) that "pretrial detainees are entitled to a greater degree of medical care than convicted inmates" but both the majority and concurring opinions adopt and apply the standard of deliberate indifference in a case involving the suicide of a pretrial detainee); *Bowen v. City of Manchester,* 966 F.2d 13, 16–17 (1st Cir.1992); *Manarite v. City of Springfield,* 957 F.2d 953, 955–56 (1st Cir.1992); *Hall v. Ryan,* 957 F.2d 402, 406 and n. 6 (7th Cir.1992);

judge correctly instructed the jury with regard to the applicable standard of care.

## IV.

Appellant asserts that comments made by the district court during the trial were so prejudicial to him as to constitute denial of a fair trial. Appellant stresses that during cross-examination of appellee's jail certification expert, the trial judge admonished plaintiff's counsel that he should have sued the state. Appellant argues that that comment effectively told the jury that the defendants were relieved of liability by the state certification process. However, a careful reading of the record suggests that in their totality, those remarks by the district court served the purpose of clarification, and in and of themselves do not constitute reversible error.

AFFIRMED.

Barber v. City of Salem, 953 F.2d 232, 239–40 (6th Cir.1992); Leshore v. County of Worcester, 945 F.2d 471, 474 (1st Cir.1991); Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990); see also Colburn v. Upper Darby Township, 946 F.2d 1017, 1024 (3rd Cir.1991), in which the Third Circuit found it "unnecessary" to "distinguish" between or to "precisely define" the two "concepts" of " 'reckless indifference' " and " 'deliberate indifference' "; citing to Williams v. Borough of West Chester, Pa., 891 F.2d 458 (3rd Cir.1989), in which that Court declined to "distinguish among terms like 'reckless indifference,' 'deliberate indifference,' 'gross negligence,' or 'reckless disregard' in this context." Id. at 464 n. 10.