**Donna Gayle CLINTON, as Personal Representative of the Estate of Chad Edward Clinton, Plaintiff,**

v.

**COUNTY OF YORK, a political subdivision of the State of South Carolina; Danny Edward Stacks; D. Reece Catoe, Jr.; Troy R. Anderson: and Troy A. Byers, in their respective individual capacities as Officers of the York County Detention Center; and George M. Eaton, Sheriff of York County, Defendants.**

Civ. A. No. 0:94–1624–17.

United States District Court,
D. South Carolina,
Rock Hill Division.

June 16, 1995.

Leland Bland Greeley, Poore and Greeley, Rock Hill, SC, for plaintiff.

Terry B. Millar, McKinney, Givens & Millar, P.A., Rock Hill, SC, for defendant.

## MEMORANDUM OPINION AND ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is presently before the court on the Defendants' Motion for Summary Judgment as to all of the Plaintiff's causes of action. The court heard oral argument on the motion on May 18, 1995 and announced its ruling at the conclusion of the hearing. This order serves to memorialize the court's ruling. For the reasons stated in open court, and as further explained in this opinion, the Defendants' Motion for Summary Judgment is granted as to the Plaintiff's claims under 42 U.S.C. § 1983. As to the Plaintiff's claims under South Carolina statutory and common law, which are before the court under its supplemental jurisdiction, the court has decided not to exercise continuing jurisdiction, having dismissed all of the claims over which the court has original jurisdiction. Accordingly, the court remands the remaining state-law causes of action to the Court of Common Pleas for York County, South Carolina, from where the case was removed.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well-established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the Plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. FACTS

Viewed in the light most favorable to the Plaintiff, the facts of this case are as follows. On the evening of January 25, 1992, deputies from the York County Sheriff's Department arrested the Plaintiff's decedent, Chad Edward Clinton ("Clinton"), in Clover, South Carolina after a brief automobile chase. Clinton was charged with failure to stop for a blue light and with an improper start. He was taken to the York County Detention Center in Rock Hill, South Carolina shortly after midnight, where detention officers booked him and the magistrate set his bond. Clinton's parents telephoned the detention center shortly after his arrival there, but they were told that the magistrate on duty was leaving for the night and that they would not be able to post bond until the next morning. Clinton was then placed into a small holding cell, where he was to spend the rest of the night. Later that evening, two other detainees were placed in the holding cell with Clinton. The detention officers made periodic checks of the cells throughout the night, but reported no disturbances or problems in Clinton's cell. The holding cell was last checked at 4:30 a.m., and Clinton and the other two detainees appeared to be sleeping.

At approximately 4:47 a.m., one of the detention officers opened the door to Clinton's cell to allow another inmate, who was being booked, to use the toilet in the holding cell. The officer discovered Clinton hanging by a noose fashioned from a bed sheet and

attached to the shower door in the cell. The officer immediately called for help, and another officer brought a pair of scissors from the booking area. The officers cut the sheet and laid Clinton's body down on the mattress pad in the cell. The officers checked for vital signs, but found no pulse or breathing. The officers did not attempt cardiopulmonary resuscitation (CPR) because they believed that Clinton was already dead. One of the officers called for an ambulance, which arrived on the scene at 5:02 a.m. The emergency medical technicians also found no vital signs from Clinton's body. The York County Coroner was then called to the scene, and he pronounced Clinton dead at 5:55 a.m., listing the time of death as approximately 4:40 a.m. on January 26, 1992.

Donna Gayle Clinton, the mother of the decedent and the personal representative of his estate, brought this action in the Court of Common Pleas of York County, South Carolina against York County, the detention center officers on duty the night of her son's death, and then-Sheriff of York County, George M. Eaton. The amended complaint contains two causes of action under 42 U.S.C. § 1983 against the detention officer Defendants for failing to take measures to prevent Clinton's suicide and for failing to attempt any lifesaving procedures after discovering Clinton hanging in his cell. In addition, the amended complaint contains a cause of action against York County under the South Carolina Tort Claims Act for alleged derelictions of both the York County Magistrate and the officers of the York County Sheriff's Department who operated the detention center at the time of Clinton's death. Finally, the amended complaint contains a cause of action against former Sheriff Eaton under S.C.Code Ann. § 24–5–10 (Law.Co-op.1989), which imposes on sheriffs liability for the actions of their jailers.

The Defendants removed the Plaintiff's action to this court based on federal question jurisdiction over the section 1983 causes of action and supplemental jurisdiction over the state-law causes of action. All of the Defendants have moved for summary judgment on all causes of action.

## II. DISCUSSION

### A. Section 1983 Action Against Individual Officers

■ In *Gordon v. Kidd,* 971 F.2d 1087 (4th Cir.1992), the Fourth Circuit Court of Appeals stated, "The law of this circuit governing § 1983 actions arising out of jail suicides is clear. Prison officials violate the civil rights of inmates when they display 'deliberate indifference to serious medical needs.'" *Id.* at 1094 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). Serious medical needs can include serious psychological problems, such as a desire to commit suicide. *Buffington v. Baltimore County, Md.,* 913 F.2d 113, 120 (4th Cir.1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991). It is well settled that this standard applies to pre-trial detainees through the Due Process Clause of the Fourteenth Amendment. *Gordon,* 971 F.2d at 1094; *Loe v. Armistead,* 582 F.2d 1291, 1294 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980).

The Plaintiff alleges in essence that the detention officer Defendants were deliberately indifferent to Clinton's serious medical needs in two basic respects: (1) failing to take reasonable measures to prevent his suicide; and (2) failing to perform lifesaving techniques, such as CPR, on him after they discovered him hanging in the cell. Neither of these allegations is sufficient to support a cause of action under section 1983 given the facts of this case.

### 1. Failure to prevent suicide

■ In *Gordon,* one of the seminal cases in the Fourth Circuit on jail suicides, the court stated, " '[T]he key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies.'" 971 F.2d at 1094 (quoting *Elliott v. Cheshire County,* 940 F.2d 7, 10–11 (1st Cir.1991)). This standard must be revised somewhat in light of the United States Supreme Court's recent decision in *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In *Farmer,* the Court adopted a subjective standard for deliberate indifference. The Court held that a prison official cannot be found liable under the Eighth Amendment [1] for deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at ——, 114 S.Ct. at 1979. Accordingly, the standard for deliberate indifference articulated in *Gordon v. Kidd, supra,* should no longer impose liability when an officer "reasonably should have known" of a detainee's suicidal tendencies; under *Farmer,* actual (or constructive) knowledge of the risk of suicide is required.[2]

■ Generally in a jail suicide case, to establish knowledge of a strong risk of suicide, the plaintiff would have to show that the defendant officials were aware of a previous threat or an earlier attempt at suicide. *See Edwards v. Gilbert,* 867 F.2d 1271, 1275 (11th Cir.1989) ("In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the nation ... that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference."), *quoted in Gordon v. Kidd,* 971 F.2d at 1094.

■ Viewed in the light most favorable to the Plaintiff, the evidence in this case is simply insufficient to support a finding of deliberate indifference. The Plaintiff relies most strongly on the deposition testimony of witness Kelly Thomas, who was incarcerated in a cell adjacent to Clinton's at the York County Detention Center on the night of Clinton's death. Thomas testified that the detention officers failed to respond to his and Clinton's yelling and banging on the cell doors in an attempt to have the officers turn on a light in the holding cells or move Clinton to a different cell. Even assuming, as the court must at this point, that the officers heard this commotion, there is no evidence that Clinton or Thomas ever indicated that Clinton was in serious distress or was contemplating suicide. Certainly yelling and banging on cell doors is so commonplace in jails that it alone cannot indicate that a detention officer who heard it knew that an inmate was a serious suicide risk.

The only other evidence relied on by the Plaintiff on this issue is the testimony of the Plaintiff's expert witness, Ken Katsaris. In his deposition, Katsaris testified that Defendant Anderson should have further investigated concerns about Clinton's possible suicidal tendencies because of Clinton's parents' reaction to his arrest. Katsaris bases his conclusion on the general problem with youth suicide in situations such as that faced by Clinton. Katsaris's general observations about teen suicide may be valid, but his conclusions are not determinative on the issue of deliberate indifference because they cannot establish actual or constructive knowledge by the officers of Clinton's specific risk of suicide, as required by *Farmer v. Brennan.*

## 2. Failure to attempt life-saving techniques

■ The second allegation of deliberate indifference involves the officers' failure to

---

1. Because Clinton was a pre-trial detainee, this case should be analyzed under the Fourteenth Amendment, not the Eighth Amendment. *E.g., City of Revere v. Massachusetts General Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). Nevertheless, in *Hill v. Nicodemus,* 979 F.2d 987 (4th Cir.1992), the Fourth Circuit refused to apply a more liberal standard to pre-trial detainees than to convicted prisoners for purposes of their right to medical attention. As the *Hill* court recognized, " 'Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.' " *Id.* at 991 (quoting *Gordon v. Kidd,* 971 F.2d at 1094).

2. The "reasonably should have known" standard is an objective standard because it focuses on what a reasonable person should have known under the circumstances. In *Farmer* the Court explicitly rejected an objective standard for defining deliberate indifference. On the other hand, the *Farmer* Court stated that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." —— U.S. at ——, 114 S.Ct. at 1981. In other words, the Court recognized that constructive knowledge may be enough to infer that the prison official was in fact aware of the risk. As a practical matter, the "obviousness" exception articulated in *Farmer* is quite similar to the objective "reasonably should have known" standard articulated in *Gordon v. Kidd.*

perform CPR after they discovered Clinton hanging in his cell. It is undisputed that none of the officers attempted CPR on Clinton because they believed he was already dead. The situation in this case is virtually indistinguishable from one of the suicides in *Ward v. Holmes,* Nos. 93–2209, 93–2210, 1994 WL 313624 (4th Cir. June 30, 1994) (unpublished), a recent unpublished Fourth Circuit decision.[3] In *Ward,* plaintiff Leitzsey's decedent was discovered hanging in his cell, but the detention officers did not perform CPR. In finding no deliberate indifference, the court stated as follows:

> When [the defendants] examined Leitzsey, they found no pulse or respiration. Based on the absence of pulse and respiration, in combination with Leitzsey's appearance and the temperature of his body, [the defendants] believed that Leitzsey was dead.... Because the officers believed that Leitzsey was dead, their failure to attempt to resuscitate him was at most negligence.

Slip op. at 16, 1994 WL 313624, at *7.

The Plaintiff cites to *Heflin v. Stewart County, Tn.,* 958 F.2d 709 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 598, 121 L.Ed.2d 535 (1992), in support of her argument that the officers' failure to attempt lifesaving techniques amounts to deliberate indifference. In *Heflin,* the Sixth Circuit Court of Appeals upheld a jury verdict in favor of the family of a detainee who hanged himself in his prison cell. The jury found that the jailers exhibited deliberate indifference to Mr. Heflin's serious medical needs by failing to take any steps to save his life after they discovered him hanging in the cell. The court in *Heflin* determined that the district court did not err in submitting to the jury the question of deliberate indifference. The *Heflin* case is not, however, dispositive of the issues presently before the court.

First, the *Heflin* decision preceded the Supreme Court's decision in *Farmer v. Brennan, supra,* in which the Court adopted a subjective standard for deliberate indifference. In *Heflin,* the court of appeals apparently applied an objective test for deliberate indifference:

> "[T]he test is *whether prison administrators are taking reasonable steps* to prevent a pervasive risk of harm. A pervasive risk of harm entails much more than mere negligence." When Deputy Crutcher [ (one of the defendants) ] discovered the hanging body and when Sheriff Hicks [ (another defendant) ] arrived at the cell, there was a "pervasive risk of harm" to Heflin [ (the decedent) ]. They took *no reasonable steps* to attempt to save his life.

*Heflin,* 958 F.2d at 716 (emphasis added) (quoting *Roberts v. City of Troy,* 773 F.2d 720, 724 (6th Cir.1985)). Whether *Heflin* remains good law after *Farmer v. Brennan* is highly questionable.

Moreover, the facts of *Heflin* are easily distinguished from the facts presented here. In *Heflin* the decedent's hanging body was discovered by one of the jailers at 12:06 p.m. The officers left the decedent hanging for twenty minutes or more after discovering him, even though his body was warm and his feet were touching the floor. Although the officers found no pulse or breathing, there was some evidence that the county medical examiner, who arrived at the jail at approximately 12:12 p.m., heard a heartbeat upon his initial examination of the hanging body. The death certificate listed the time of death as 12:30 p.m. In addition, there was some evidence that the sheriff, who ordered no one to attempt to revive the decedent, or even to cut him down for resuscitation efforts, was the subject of a previous complaint by the decedent and, therefore, may have had a grudge against the decedent.

In the instant case, the officers immediately cut Clinton's body down and laid him on the mattress pad in the cell. Furthermore, there is no allegation that the officers acted with any ill will towards Clinton. Although the officers did not perform CPR on Clinton, their failure to do so was, at most, negli-

---

3. The court recognizes that unpublished decisions of the Fourth Circuit Court of Appeals are not binding precedent in this circuit. Nevertheless, the facts of the *Ward* case are so similar to those of the instant case, that the analysis in the *Ward* decision is quite persuasive here.

gence,[4] not deliberate indifference. As the United States Supreme Court held in *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986), "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." In other words, the detention center officers cannot be held liable under section 1983 for mere negligence. Accordingly, these Defendants are entitled to summary judgment on this theory of the Plaintiff's action under section 1983.

### B. Section 1983 Action Against York County

As discussed previously, the Plaintiff's complaint asserts, as the first cause of action, a claim against the County of York for the actions of the detention center officers as well as the actions of the county magistrate. The allegations against the county are apparently brought only under the South Carolina Tort Claims Act, and not under section 1983. Nevertheless, even if the court construes the allegations against the county as arising under section 1983, the county would not be liable under section 1983.

█ In *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that local governments cannot be held liable under section 1983 under principles of *respondeat superior*. To establish liability under section 1983 on the part of the county, the Plaintiff would have to show that an underlying constitutional violation was caused by a policy or custom of the county. As discussed previously, the court has determined that there was no underlying constitutional violation on the part of the individual officer Defendants; therefore, there is no liability on the part of the county under section 1983 for the actions of the officers. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir.1993) (citing *City*

*of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)). Even assuming, *arguendo*, that the Plaintiff could establish an underlying constitutional violation, she has identified no evidence that the individual officers' actions were taken pursuant to a policy or custom of the county.[5]

█ Any claim under section 1983 by the Plaintiff against the county for the actions of the magistrate judge also must fail. The Plaintiff alleges that the magistrate judge wrongfully denied her the opportunity to post bond for her son, which resulted in her son's having to spend the night in jail. Although a criminal defendant may have a constitutional right to reasonable bond, the court knows of no authority (and the Plaintiff has failed to cite any) recognizing a constitutional right to bond at any hour of the night. Thus, the actions of the magistrate did not violate Clinton's constitutional rights, and the county has no liability under section 1983.

### C. Section 1983 Action Against Sheriff Eaton

The fourth cause of action in the Plaintiff's amended complaint is against Defendant Eaton, who was the Sheriff of York County at the time of Clinton's suicide. The allegations against the sheriff, like those against the county, are not specifically brought pursuant to section 1983; rather, the Plaintiff bases her action against Sheriff Eaton on S.C.Code Ann. § 24–5–10 (Law.Co-op.1989), which provides that sheriffs are liable for the actions of their jailers. To the extent that the allegations against Sheriff Eaton could be construed as an action under section 1983, this court's analysis in dismissing any section 1983 actions against the county applies equally to Defendant Eaton. The court has determined that the detention center officers committed no constitutional violation against Clinton. Furthermore, there is no evidence

---

4. Because the court has decided to remand all of the Plaintiff's state-law claims, the court expresses no opinion about whether the Defendants' actions were, in fact, negligent. In addition, the court does not address the Defendants' argument that their actions or inactions, even if deliberately indifferent or negligent, were not a proximate cause of the decedent's death.

5. The court does not address the county's argument that the York County Sheriff's Department has the sole responsibility for operating the York County Detention Center and that the county therefore has no liability for any actions of the officers at the detention center.

of any policy or custom on the part of Sheriff Eaton that led to the deprivation of any of Clinton's constitutional rights. Therefore, Defendant Eaton is also entitled to summary judgment on the Plaintiff's claims under section 1983.

### D. State-law Claims Against York County and Sheriff Eaton

■ The Plaintiff's complaint contains several state-law claims against both the county and Defendant Eaton, which claims are presently before the court under its supplemental jurisdiction. Having dismissed the Plaintiff's federal claims, the court must now decide whether to retain jurisdiction over these state-law claims. Under 28 U.S.C. § 1367(c)(3), the court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." In other words, the court has discretion whether or not to exercise jurisdiction over pendent state-law claims once it has dismissed the federal claims to which the state-law claims had attached. The court's discretion on this issue is guided by the United States Supreme Court's decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which addressed pendent jurisdiction before the enactment of 28 U.S.C. § 1367. In *Gibbs*, the Court stated:

> [P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its jurisdiction lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdic-

tion over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* at 726, 86 S.Ct. at 1139.

■ Several of the Plaintiff's claims here involve apparently unresolved issues of state law that would be better left to a state court to decide. For example, Defendant Eaton argues that S.C.Code Ann. § 24–5–10 (Law. Co-op.),[6] which is the primary basis for the Plaintiff's fourth cause of action, was implicitly repealed by the South Carolina Tort Claims Act, S.C.Code Ann. §§ 15–78–20(b), 15–78–60(25).[7] In addition, the Defendant asserts that under South Carolina law, the operation of the county detention center is the sole responsibility of the sheriff's department, not the county itself. On the other hand, the Plaintiff contends that the county voluntarily assumed responsibility for the operation of the York County Detention Center and, therefore, should be liable for the actions of the detention center officers.

After weighing the considerations of comity and federalism, the court has determined that the most appropriate course of action is to decline to exercise continuing jurisdiction over the Plaintiff's remaining state-law claims. Although this case is on the eve of trial, the court believes that justice would better be served by having these significant

---

6. Section 24–5–10 provides, "The sheriff shall have custody of the jail in his county and, if he appoint a jailer to keep it, the sheriff shall be liable for such jailer and the sheriff or jailer shall receive and safely keep in prison any person delivered or committed to either of them, according to law."

7. Section 15–78–20(b) provides, in pertinent part:

> The General Assembly in this chapter intends to grant the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability and suit for any tort except as waived by this chapter. The General Assembly additionally intends to provide for liability on the part of

the State, its political subdivisions, and employees, while acting within the scope of official duty, only to the extent provided herein.... The remedy provided by this chapter is the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents except as provided in § 15–78–70(b).

In addition, section 15–78–60(25) provides that "[t]he governmental entity is not liable for a loss resulting from ... responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any ... prisoner [or] inmate ... of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner."

unresolved issues of state law decided by a state court. Certainly, since the parties have finished discovery in this case, they should be able to obtain a ruling on the Defendants' Motion for Summary Judgment and, if necessary, a trial on the remaining issues before the state court in a timely fashion. Because the Plaintiff's state-law claims were removed to this court under its supplemental jurisdiction, the court remands them to the state court from which they were removed.

## III. CONCLUSION

For the foregoing reasons, the court concludes that the individual Defendants are entitled to summary judgment on the Plaintiff's claims under section 1983. In addition, the court grants summary judgment to York County and Defendant Eaton for any of the Plaintiff's claims under section 1983. The remainder of the Plaintiff's claims are remanded to the Court of Common Pleas for York County, South Carolina.

IT IS SO ORDERED.