Christopher Lee BURTON, Plaintiff,

v.

YOUTH SERVICES INTERNATIONAL, INC., Defendant.

No. Civ. A. JFM–96–1883.

United States District Court, D. Maryland.

Nov. 25, 1997.

Howard J. Needle, Needle, Montague & Frank, Owings Mills, MD, for Plaintiff.

Daniel Karp, Allen Johnson, Baltimore, MD, for Defendant.

## OPINION

MOTZ, District Judge.

Plaintiff, Christopher Burton, has brought this action against defendant Youth Services International, Inc. ("YSI") Burton alleges that he was sexually assaulted by his roommate, Toby Austin, while confined at the Charles H. Hickey School in Maryland. Under a contract with the state of Maryland, YSI is responsible for the management and day-to-day operations of the Hickey School. Burton claims that YSI is liable under 42 U.S.C. § 1983, and under common law theories of negligence, gross negligence and intentional infliction of emotional distress.

Burton has moved to amend his complaint to define his § 1983 claim as being based on YSI's alleged violations of the Eighth and Fourteenth Amendments to the United States Constitution and its failure to train and supervise its employees. YSI has opposed the motion to amend the complaint, and has filed a motion for summary judgment. Burton's motion to amend his complaint will be denied. YSI's motion for summary judgment will be granted with respect to Count One of the complaint, and the remaining state law claims will be dismissed without prejudice.

## I.

Burton was ordered into the custody of the Hickey School from November 10, 1993 through December 5, 1993. On November 23, the school removed Burton from his original room and reassigned him to a room with an eighteen-year-old named Toby Austin. Several days prior to the transfer, Austin had been subdued following violent behavior and the guards had been asked to keep an eye on him. The school provided no reason for the transfer, and the guard handling the transfer said to Burton, "See how you like this."

On the night of the transfer, Austin repeatedly punched Burton. Austin also forced Burton to read a letter from Austin's girlfriend aloud while Austin masturbated. Later that evening, Burton asked to be taken to the bathroom, allegedly in order to protect himself from further abuse. Burton told the staff worker on the way to the bathroom that Austin had physically assaulted him and that Austin was "crazy" and "might try to kill" Burton. The guard told Burton that he had no authority to change his room and he would have to wait until morning. The guard returned Burton to the room with Austin. That night, Austin raped Burton, and threatened to harm or kill him if he reported the incident to the staff.[1]

The next morning, Burton again asked for a new room assignment. Roland Johnson, a unit manager, learned of the request and asked Burton about his reasons for pursuing a transfer. Burton told Johnson that Austin was "crazy." When Johnson required more specific information, Burton stated that Austin made him read a letter from Austin's girlfriend while Austin masturbated, and that Austin had punched him in the stomach. Burton did not mention the sexual assault. Johnson confronted Austin, who admitted that both of Burton's allegations were true. Johnson assigned Burton to a new room and reprimanded Austin. Burton and Austin had no further contact.

A few days later, Burton told Fred Claiborne, a YSI youth worker, that Austin had sexually assaulted him. However, Burton refused to make a written statement detailing his allegations. Burton at times told other staff workers of the rape, but either later denied that the sexual assault occurred or refused to document the allegation. On November 28, 1993, Burton's mother, Joy Burton, visited the Hickey School. She noticed that Burton was bruised, and learned that he had been beaten up. Burton and his mother met with Lindsay Pratt, Carol Stuckey, and Charles Winslow, staff members at the Hickey School. At that meeting, the Burtons documented the physical assault by Austin, but did not mention a sexual assault.

1. The exact sequence of events on the night in question is unclear because, as Burton acknowledges, his deposition testimony differs from his answers to interrogatories. The significant facts are the same in both accounts: Austin assaulted Burton both physically and sexually, and Burton reported the incident to a night guard who did not change his room assignment.

In March of 1994, Burton violated his home detention and returned to the Hickey School. During this confinement, Burton told the Director of Support Services, John Goings, that he had been sexually assaulted by Austin in November, 1993. Burton informed Goings that this was the first time he had reported the incident. Goings investigated the claims, but the findings were inconclusive that a sexual assault had occurred. Burton claims that he has suffered social ridicule, physical symptoms, emotional distress and mental anguish as a result of the incident, and that he has contemplated suicide.

## II.

■ Burton has moved to amend his complaint to clarify Count One, his allegation that YSI violated § 1983.[2] The wording of the original complaint expressly alleged only a vicarious liability theory.[3] Both parties now agree that YSI cannot be held liable under a theory of respondeat superior. Burton's proposed amendment would claim that YSI directly violated Burton's constitutional rights under the Eighth and Fourteenth Amendments through its unconstitutional policy regarding room changes or, in the alternative, its failure to train and supervise its workers with respect to room changes. The original complaint did not mention the Eighth and Fourteenth Amendments or a failure to train. However, if Burton's pleading were liberally construed, it might be said to claim that YSI had an "unconstitutional policy" that violated the residents' Fourteenth Amendment rights.[4] I will address that claim as if it were specifically pled. However, for the reasons I set forth below, I do not find that the original complaint gave the defendants fair notice of a "failure to train" claim.

2. Burton's amended complaint also makes minor changes that do not materially affect his claims. The only other significant change is the deletion of what he acknowledges to be an unsupportable allegation that YSI failed to provide adequate medical care. That claim is dismissed.

3. The original Count One reads: "Defendant through its agents, employees and representatives, acted at all times pertinent hereto under color of State law and the conduct complained of

## A.

■ Congress did not intend to impose liability upon municipalities and corporations every time one of their employees violates a person's constitutional rights. *See Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *see also Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir.1982) (equating § 1983 liability of municipalities and private corporations). They can be held liable only when action pursuant to an official corporate policy or custom *caused* the constitutional tort. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Thus, to defeat summary judgment on an "unconstitutional policy" theory, Burton must produce evidence that YSI had an official policy or custom that was constitutionally forbidden. *See Spell v. McDaniel,* 824 F.2d 1380, 1385–87 (4th Cir.1987).

■ Burton alleges YSI had a policy "to ignore the student's concerns and to maintain the student in his assigned room until morning" or a policy "against changing rooms at all, but specifically against doing so at night." YSI's consistently stated official policy is to require both an articulation of a legitimate reason for a room change and evidence of detrimental behavior on the part of the roommate before a room can be changed. That policy is not constitutionally infirm. When Burton articulated legitimate reasons and the unit manager confirmed the allegations with Austin, YSI changed Burton's room assignment on the same day in accordance with its stated policy.

■ Burton has produced no evidence that YSI's custom is in fact different from its stated policy. A custom would have to be established by the persistent, widespread practices of YSI officials, and the practices

deprived the Plaintiff of rights and privileges secured by the Constitution and/or laws of the United States and in violation of 42 U.S.C. Section 1983."

4. Burton cannot assert a valid Eighth Amendment claim because he had not been convicted of a crime. *See Hill v. Nicodemus,* 979 F.2d 987, 990–91 (4th Cir.1992). Pretrial detainees' rights are protected by the Due Process Clause of the Fourteenth Amendment. *Id.*

would have to be so frequent in occurrence that knowledge of the custom could be imputed to YSI's official policymakers. *See Spell v. McDaniel*, 824 F.2d 1380, 1386–87 (4th Cir.1987). Burton provides no evidence that YSI employees customarily denied room changes at night where the staff member felt that the policy's conditions were met. Even assuming that one or more of YSI's employees violated Burton's constitutional rights in the handling of his complaints, evidence of a single incident does not establish a custom sufficient to prove the liability of the employer.[5] Without any evidence of an unconstitutional policy or custom, summary judgment must be granted on the § 1983 claim stated in the original complaint.

## B.

■ Because his original complaint does not include a claim or any factual allegations that YSI failed to adequately train its employees, Burton has moved to amend his complaint to include that claim. As a general rule, amendments to complaints are freely permitted where justice so requires. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, "disposition of a motion to amend is within the sound discretion of the district court." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir.1987). A court may deny a motion to amend where the movant unduly delays filing the motion and where amendment would unduly prejudice the non-moving party. *See id.*

■ In this case, Burton did not move to amend his § 1983 claims until approximately eighteen months after filing his original complaint. This was long after the deposition of Cornelia Exum conducted in February, 1997, during which YSI's counsel stated that questions being asked by Burton's counsel were irrelevant because Burton was not pursuing a "failure to train" claim. Burton's counsel merely responded "All right." Having been expressly put on notice of the possibility of such a claim and the expanded scope of discovery it would open, Burton let the June

9, 1997 discovery deadline expire without moving to amend his complaint. It was not until after YSI had filed its motion for summary judgment and exposed the flaws in Burton's case that the motion to amend to add a failure to train claim was added.

If Burton's motion were granted, discovery would have to be reopened and an entirely new schedule set. Not only would this prejudice YSI, *see Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir.1993), it would harm the public interest by undermining the orderly administration of justice. The era has passed in which courts simply ignored the damage caused by permitting endless motions to amend and the delay that such motions entail. It is now recognized that justice and the fair and efficient resolution of claims (by judicial decision or settlement among the parties) requires sound management. It is further recognized that sound management cannot tolerate, as a matter of routine, the addition of new claims after discovery has closed simply because a party's existing claims have been shown not to be legally viable.

■ This does not mean, of course, that motions to amend are never to be granted after the close of discovery. If a party can demonstrate that the amendments are needed only to conform the pleadings to the facts that are already fully on the record (thus obviating the need for further discovery) or that further discovery is necessary because of facts justifiably learned for the first time near the end of discovery, a judge should exercise her discretion to reopen discovery and otherwise amend the existing schedule. However, neither of these scenarios is the one present here. Therefore, Burton's motion to amend will be denied.

## III.

■ Counts Two through Four of Burton's complaint allege claims based on Maryland state law. Burton's negligence claim raises an issue concerning the applicability of Maryland Code Annotated § 3–823(c)(1) that

---

5. The same analysis would apply to YSI's policy or custom for assigning residents to rooms. YSI's stated policy, which considers whether students are violent or new to the system, is not constitutionally infirm. Burton does not provide evidence of persistent, widespread assignments violative of this stated policy that would prove the existence of a contrary custom.

should properly be considered by the Maryland courts. Because I have granted summary judgment on all of Burton's federal claims, I therefore decline to exercise supplemental jurisdiction on his state law claims pursuant to 28 U.S.C. § 1367(c)(3). Although the facts giving rise to Burton's state law claims occurred more than three years ago, the Maryland statute of limitations will not bar his recovery if he files suit in state court within thirty days of this opinion. Md. R. Proc. 2–101(b).