Sherri A. TURNER, Plaintiff,

v.

Raymond M. KIGHT, et al. Defendants.

No. CIV.A. AW–01–1408.

United States District Court,
D. Maryland.
Southern Division.

March 25, 2002.

Ralph T Byrd, Laytonsville, MD, for Sherri A. Turner.

Frank William Mann, Office of the Atty. Gen., Baltimore, MD, for Raymond M. Kight, Bruce P. Sherman, Rodney Brown, Richard Kane, Robin Lewis, William Pechnick, Eric Brown, Brian Phillips.

Joann Robertson, Montgomery County Attorney's Office, Rockville, MD, Patricia P. Via, Montgomery County Attorney's Office, Rockville, MD, for Arthur M. Wallenstein, T.L. Hicks, R. Andrews, Montgomery County, MD.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

This case arises out of various claims of federal civil rights and state constitutional and common law violations related to the arrest and detention of Plaintiff Sherri A. Turner by Defendants Raymond M. Kight,

Bruce P. Sherman, Rodney Brown, Richard Kane, Robin Lewis, William Pechnick, Eric Brown, and Brian Phillips ("State Defendants"), as well as Defendants Arthur M. Wallenstein, Theresa Hicks, Robert Andrews, and Montgomery County ("County Defendants"). Several motions are pending before the Court: (1) State Defendants' Motion to Dismiss and/or for Summary Judgment [7–1; 7–2]; (2) County Defendants' Motion to Dismiss Complaint, or in the Alternative, for Summary Judgment [8–1; 8–2]; (3) State Defendants' Motion to Dismiss Amended Complaint, or in the Alternative, for Summary Judgment, or in the Alternative to Strike [12–1; 12–2]; (4) County Defendants Motion to Dismiss Amended Complaint and/or Motion for Summary Judgment [13–1; 13–2]; (5) Plaintiff's Cross–Motion for Continuance to Permit Discovery [14–1]; and (6) Plaintiff's Motion to Excuse Late Filing [17–1].

The Court has reviewed the pleadings and applicable law and has determined that no hearing is necessary. *See* D. Md. R. 105(6). For the reasons stated below, the Court will deny as moot both the State and County Defendants' Motions to Dismiss, or the in Alternative, for Summary Judgment. The Court will grant summary judgment to the Defendants on Counts I through VIII, and Counts X and XI. In addition, the Court will grant Defendant's Motion to Dismiss on Counts IX and XII. The Court will dismiss all remaining state counts (Counts XIII to XIX). Finally, the Court will deny Plaintiff's Motion for Continuance to Permit Discovery and will grant Plaintiff's Motion to Excuse Late Filing.

### *FACTUAL BACKGROUND*

Plaintiff is a forty-five year old African American physician who resides in Montgomery County, Maryland. As a result of an automobile accident in 1997, Plaintiff sustained spinal cord injuries, which she claims rendered her disabled. *See* Pl.'s Am. Compl. at ¶ 6. On February 7, 2002, Plaintiff's fifteen-year old daughter was struck by an automobile and hospitalized for a week. Plaintiff stayed with her daughter during the hospitalization period, and as a result missed a February 9, 2000 appearance in the District Court of Maryland for Montgomery County for an oral examination in aid of enforcement of a former landlord's money judgment.

Plaintiff claims that she sent a letter dated March 7, 2000, to the state court requesting a new appearance date for the following summer. On March 30, 2000, however, the state court issued an arrest warrant for Plaintiff on a charge of contempt of court. According to the arrest warrant, Turner was required to post bond in the amount of $5,500.00. On April 6, 2000, the Montgomery County Sheriff's Office sent Plaintiff a notice advising her of the arrest warrant and requesting her immediate response. Allegedly without knowledge of the March 30 arrest warrant, Plaintiff sent the court a second letter by certified mail on April 7, 2000.

Plaintiff claims that upon receipt of the April 6 notice, she initiated telephone calls over the next three days to the Montgomery County Sheriff's Office and spoke with three individuals, including Defendant Kane. During the conversations, Plaintiff claims that she explained that she is disabled, needed to arrange handicap transport, and advised Defendant Kane that she would call him ahead of time to let him know when she was coming so that she could come in and handle the matter expeditiously. State Defendants claim that on April 7, 2000, Plaintiff contacted the Sheriff's Office and advised it that she would turn herself in on April 13, 2000. *See* State Defs.'s Mot. to Dismiss, or in the

Alternative, for Summ. J., or, in the Alternative, to Strike ("Defs.'s Mot. to Dismiss") at 3. State Defendants claim that Plaintiff called again to change the turn-in date to April 14, 2000. However, Plaintiff did not appear on either date, nor did she call to schedule an alternative date. *Id.*

Five days later, on April 19, 2002, Defendants Lewis and Pechnick, along with a third officer, went to Plaintiff's home. Plaintiff alleges that Defendants Lewis and Pechnick "stormed into Plaintiff's residence while Plaintiff was in bed, terrifying Plaintiff's daughters." Pl.'s Am. Compl. at ¶ 27. Plaintiff claims that Defendant Lewis shouted orders to Plaintiff and told her " 'to stop talking because she was going to jail' and that she 'understood' Plaintiff and Plaintiff's 'game.' " *Id.* at ¶ 28. Plaintiff alleges that she informed Defendant Lewis that she had been in touch with Defendant Kane, and after verifying that information, Defendant Lewis told Plaintiff to come to the Sheriff's Office by April 21, 2000, or else be arrested and spend the weekend in jail. State Defendants claim that during the visit, they "observed Turner walking down the steps of her home 'without the assistance of a cane or a noticeable limp' " and that they agreed not to arrest Turner, but to allow her a third opportunity to turn herself in. State Defs.'s Mot. to Dismiss at 4.

On April 20, 2000, unbeknownst to Plaintiff, the District Court of Maryland for Montgomery County set a May 17, 2000 hearing on Plaintiff's Motion to Strike Body Attachment. On April 21, 2000, Plaintiff came to the Montgomery County Sheriff's Office with her fourteen-year old daughter. Defendant Pechnick instructed Plaintiff to leave her pocketbook and to accompany him, which she did. Plaintiff alleges that she was then "taken to a room, handcuffed to a table and arrested." Plaintiff claims that Defendant Pechnick

then searched Plaintiff and required her to surrender all her belongings, including her medicine and neck brace, copies of the papers Plaintiff had filed with the court, and documentation about her medical disability. Plaintiff alleges that Defendant Pechnick noted Plaintiff's three spinal surgery scars, and commented that the scars were " 'nothing, they will go away.' " Pl.'s Am. Compl. at ¶ 33.

Plaintiff next alleges that Defendant Pechnick drove her to a holding cell at the District Court of Maryland for Montgomery County and that when she asked for her neck brace and medicine to alleviate pain and muscle spasms, Defendant Pechnick refused her request. Plaintiff then alleges that she was detained for four hours without any lunch, was in "excruciating pain and suffering from muscle spasms and stiffness," and was once again denied her medication and neck brace. *Id.* at ¶ 36.

Plaintiff claims that she was then taken to see a judge, who refused to listen to her explanation about her motion to strike body attachment and required that she post a $100.00 cash bond before her release. Plaintiff was then taken to a holding cell for two hours while her daughter attempted to post bond. Plaintiff claims that her daughter was incorrectly informed that Plaintiff had $20.00, and that as a result, her daughter attempted to post only $80.00, only to be told that another $20.00 was required. State Defendants contend that because Plaintiff was unable to post the $100.00 bond, Plaintiff was transferred pursuant to the state judge's order to the Montgomery County Detention Center at approximately 2:45 p.m. State Defs.'s Mot. to Dismiss at 4.

Plaintiff next alleges that Defendants Brown and Phillips took Plaintiff on a painful van ride to the Montgomery County Detention Center, during which the offi-

cers refused to answer her inquiries regarding the welfare of her child, her right to a telephone call, her medicine, her tote bag with neck brace, an opportunity to see a doctor, and how she could be expected to arrange bail. Plaintiff claims that she was made to sit without seatbelts facing a steel door and that the risk of trauma from any sudden stop caused Plaintiff to suffer paralyzing fear.

Plaintiff claims that when she arrived at the Montgomery County Detention Center, she was again denied her medication and medical attention and was subjected to "a prolonged period of 'processing'." Pl.'s Am. Compl. at ¶ 44. On the other hand, Plaintiff subsequently asserts that the booking process took approximately five minutes. *Id.* at ¶ 45. Plaintiff also alleges that she was strip searched by Defendant Hicks and then placed in a cell for six hours, during which time Defendant Hicks, Andrews, and Phillips "repeatedly taunted and mocked and denied [Plaintiff] medical attention." *Id.* at ¶ 47. Plaintiff claims that she continued to experience uncontrolled pain, muscle spasms, and medication withdrawal symptoms, was taunted by Defendant Phillips, and finally released at 9:30 p.m., approximately twelve and a half hours after she first arrived at the Montgomery County Sheriff's Office.

Finally, Plaintiff alleges that subsequent to her release, she wrote several letters complaining of the events. She claims that Defendant R. Brown contacted her and "taunted, mocked and belittled" her. *Id.* at 50. In addition, she received a letter from Defendant Sherman which stated that the matter would be investigated; however, no corrective action was taken. Plaintiff also alleges that she received copy of a memorandum from a Montgomery County Council member to Defendant Wallenstein expressing concern about Plaintiff's experience; however, Plaintiff is unaware if any response was received from Defendant Wallenstein.

As a result of the above stated factual claims, in her Amended Complaint, Plaintiff claims due process violations as a result of the policies, directives, and training condoned by Defendants Kight, Sherman, R. Brown, Kane, Lewis, and Wallenstein and executed by their respective employees (Counts I, II, III, IV, V, IX). In addition, Plaintiff claims that Defendants Pechnick, E. Brown, Phillips, Hicks, and Andrews violated her due process rights by arresting her without an opportunity to be heard, denying her medical attention, and causing her physical and emotional suffering (Counts VI, VII, VIII, X, XI). Plaintiff further claims that Montgomery County is liable for ratifying Defendants' acts and omissions in violating her constitutional rights (Count XII).

Plaintiff also alleges several state claims. First, Plaintiff claims violations of Articles 24 and 25 of Maryland's Declaration of Rights for the Defendants' use of excessive force and summary punishment (Count XIII). Next, Plaintiff claims compensatory and exemplary damages for intentional infliction of emotional distress by Defendants Lewis, Pechnick, E. Brown, Phillips, Hicks, and Andrews (Counts XIV, XV). Plaintiff also claims respondeat superior liability for Defendant Montgomery County for compensatory and exemplary damages due to the intentional torts Defendant police officers (Counts XVI, XVIII). Plaintiff next claims respondeat superior liability for Defendant Montgomery County for compensatory damages for the negligence of Defendants committed within the scope of their employment (Count XVII). Finally, Plaintiff claims negligence by Defendants Kight, Sherman, Kane, R. Brown, Wallenstein, and Montgomery County for compensatory damages for negligence in failing to provide adequate

training, supervision and control of employees Lewis, Pechnick, E. Brown, Phillips, Hicks, and Andrews (Count XIX).

Plaintiff requests that the Court: (1) issue a declaratory judgment that the acts, policies, practices, and procedures of Defendants violated her due process and equal protection rights; (2) issue an injunction prohibiting Defendants from engaging in the acts complained of and requiring Defendants to take appropriate corrective action; (3) award Plaintiff $5,000,000 in compensatory damages and $10,000,000 in punitive damages; (4) expunge Plaintiff's record of the arrest; and (5) award such other further relief as may be deemed just and reasonable.

## PROCEDURAL BACKGROUND

Both the State and County Defendants filed motions to dismiss, or in the alternative, for summary judgment in response to Plaintiff's Complaint. Rather than oppose the motions, Plaintiff submitted an amended complaint in an apparent attempt to address the Defendants' arguments contained in their motions. State Defendants again moved to dismiss the amended complaint, or in the alternative, for summary judgment, or in the alternative, to strike the Plaintiff's amended complaint. County Defendants moved to dismiss the amended complaint, or in the alternative, for summary judgment.

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). Because no responsive motion has yet been served, Plaintiff's amended complaint is properly before the Court. *See McDonald v. Hall,* 579 F.2d 120, 120 (1st Cir.1978) ("Neither a motion to dismiss nor one for summary judgment is a responsive pleading for purposes of Rule 15(a)"); *Ocean Breeze Festival Park, Inc. v. Reich,* 853 F.Supp. 906,

919 (E.D.Va.1994), *aff'd sub nom. Va. Beach Policeman's Benevolent Ass'n v. Reich,* 96 F.3d 1440, 1996 WL 511426 (4th Cir.1996) (noting that "[u]nder Rule 7, motions are not considered responsive pleadings"). As a result, Plaintiff's first complaint is superseded by the amended complaint. *See Young v. City of Mt. Ranier,* 238 F.3d 567, 572 (4th Cir.2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co.,* 226 F.3d 160, 162 (2nd Cir. 2000)) (noting that as a general rule, "an amended pleading ordinarily supersedes the original pleading and renders it of no legal effect"); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended ... supersedes the pleading it modifies .... Once an amended pleading is interposed, the original pleading no longer performs any function in the case."). The Court will thus deny as moot the State and County Defendants' respective first motions to dismiss, or in the alternative, for summary judgment. Instead, the Court will consider the Plaintiff's amended complaint, and the State and County Defendants' second motions to dismiss, or in the alternative, for summary judgment.

## STANDARD OF REVIEW

### 1. Motion to Dismiss

It is well established that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining whether to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must view the well-pleaded material allegations in a

light most favorable to the plaintiff, and accept the factual allegations in the plaintiff's complaint as true. *See Flood v. New Hanover County,* 125 F.3d 249, 251 (4th Cir.1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213, 217–18 (4th Cir.1994)); *Chisolm v. TranSouth Finan. Corp.,* 95 F.3d 331, 334 (4th Cir.1996); *J.C. Driskill, Inc. v. Abdnor,* 901 F.2d 383 (4th Cir.1990).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citing *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981)). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *District 28, United Mine Workers of Am. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085–86 (4th Cir.1979). As the Fourth Circuit explained, the purpose of Rule 12(b)(6) is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint, and not the facts that support it. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994); *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *United Mine Workers,* 609 F.2d at 1085. Thus, a complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or if it alleges insufficient facts under a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed.1982)).

2. **Motion for Summary Judgment**

A motion for summary judgment will be granted only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. In assessing a motion for summary judgment, all justifiable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. At the same time, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

### *ANALYSIS*

42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To prevail under this statute, Plaintiff must show that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfs. Mut. Insur. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715 (4th Cir.1999).

Plaintiff bases her section 1983 claims on contentions that Defendants violated her Fourth, Fifth, and Fourteenth Amendment rights. The Court will address Plaintiff's claims in turn.

### 1. Supervisory Liability

#### a. State Defendants

In the first five Counts,[1] Plaintiff asserts claims of respondeat superior liability of supervisor Defendants Kight, Sherman, R. Brown, Kane, and Lewis. Plaintiff contends that the other State employees "act[ed] pursuant to policies, directives and training instituted, condoned, ratified and authorized" by these Defendants and that they were "deliberately indifferent to Plaintiff's Constitutional rights." Pl.'s Am. Compl. ¶¶ 54, 55.

■ Because Plaintiff has failed to demonstrate supervisory liability, the Court will grant summary judgment for the defendants on Counts I, II, III, IV, and V. Section 1983 does not provide for respondeat superior liability; rather, liability is premised "on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter, et al.*, 737 F.2d

368, 372 (4th Cir.1984); *see also Carter v. Morris*, 164 F.3d 215, 221 (4th Cir.1999). In order to establish such a claim, "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and 'an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Carter*, 164 F.3d at 221 (quoting *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994)).

■ In Plaintiff Turner's Amended Complaint, she fails to allege any facts that indicate actual or constructive knowledge of a risk of constitutional injury by Defendants Kight, Sherman, R. Brown, or Kane. As noted in *Slakan v. Porter, et al.*, knowledge of risk of constitutional injury is not normally based on "a single incident or isolated incidents," but more likely is based on "continued action in the face of documented widespread abuses." *Slakan*, 737 F.2d at 373. Here, not only is the alleged constitutional injury a single event, but Plaintiff's complaint is completely devoid of facts to support her claims as to Defendants Kight, Sherman, R. Brown, or Kane. In fact, Defendant R. Brown's only involvement with Plaintiff was after he was assigned to investigate a complaint forwarded to the Sheriff's Office. Brown Aff., Ex. A. Likewise, Defendants Kane's, Kight's, and Sherman's interactions with Plaintiff were limited to the paperwork involved with Plaintiff's arrest warrant and subsequent complaint. *See* Kane Aff., Kight Aff., Sherman Aff., Ex. A.

■ Plaintiff's claim of supervisory liability for Defendant Lewis must also fail. Plaintiff alleges that Defendant Lewis ac-

---

1. As a preliminary matter, State Defendants argue that Plaintiff's Complaint should be dismissed as it an attempt to sue the state officials in their official capacities, contrary to 42 U.S.C. § 1983. This argument, however, is unpersuasive, as Plaintiff's Amended Complaint states that Defendants are being sued "as individuals." Pl.'s Am. Compl. ¶ 1.

companied Defendant Pechnick to her home on April 19, 2000, and Defendant Lewis "shouted orders" to Plaintiff and told Plaintiff " 'to stop talking because she was going to jail and that she 'understood' Plaintiff's game.' " Pl.'s Am. Compl. ¶ 28. Such language, however, does not rise to the level of a constitutional injury or deliberate indifference to constitutional injury. *Cf. Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir.1999) (noting that a officer's use of racial epithets is "undeniably deplorable and unprofessional behavior [that] does not by itself rise to the level of a constitutional violation."). In addition, other than Defendant Lewis's lawful presence at Plaintiff's home on April 19, 2000, Plaintiff fails to allege any facts demonstrating a causal link between Lewis's inaction and the alleged constitutional injury; thus, her claim against Defendant Lewis must fail.

In sum, Plaintiff provides no factual basis that Defendants Kight, Sherman, R. Brown, Kane, or Lewis did anything, directed, supervised, ordered, or otherwise acquiesced in any action taken against her. Furthermore, Plaintiff fails to identify any policy, directive, or training that caused the alleged violations. Without more, these bald allegations are insufficient to state a claim of supervisory liability under section 1983; thus, Defendants' motion for summary judgment as to Counts I through V is granted.

### b. County Defendant

■ In Count IX, Plaintiff claims compensatory and punitive damages against County Defendant Wallenstein for his supervisory role over employees at the Montgomery County Detention Center. Plaintiff's claims mirror those of the supervisory State Defendants, and like those claims, she has failed to plead any facts that demonstrate supervisory liability. Nowhere in her amended complaint does Plaintiff allege that Defendant Wallenstein had any personal knowledge or involvement in Plaintiff's arrest. Thus, Plaintiff has failed to show that Defendant Wallenstein had actual or constructive knowledge of the risk of constitutional injury, that he demonstrated deliberate indifference to that risk, or that his action was causally linked to the injury suffered by Plaintiff. *See Carter*, 164 F.3d at 221. Given the utter lack of factual support, the Court will dismiss Count IX for failure to state a claim.

### 2. Employee Liability

#### a. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In evaluating a qualified immunity defense, the trial court " 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.' " *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)); *see also Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). In determining whether a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The relevant, dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 121 S.Ct. at 2156.

The qualified immunity analysis "is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.' " *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692. Thus, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727. By so doing, the court will reduce the social costs associated with bringing suit against a public official, such as "expenses of litigation, the diversion of official energy from pressing public issues, [ ] the deterrence of able citizens from acceptance of public office," and the chilling effect on a public official's pursuit of official duties. *Id.* at 814, 102 S.Ct. 2727; *see also Crawford–El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (noting that a court must determine the threshold question of the immunity defense before permitting discovery); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (same). In this way, qualified immunity serves as an *"immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806; *see also Saucier*, 121 S.Ct. at 2156.

### b. State Defendants

In Counts VI, VII, and VIII, Plaintiff claims constitutional violations pursuant to 42 U.S.C. § 1983 due to the allegedly unconstitutional behavior of State Defendants Pechnick, E. Brown, and Phillips during Plaintiff's arrest and detention. First, Plaintiff contends that Defendants had knowledge of Plaintiff's medical condition and information about her request for another hearing. Pl.'s Am. Compl. ¶¶ 83, 90, 96. Plaintiff next claims that Defendants knew or should have known that the state court granted Plaintiff's motion for a hearing and that with callous and deliberate indifference to Plaintiff's constitutional rights, Defendants nonetheless arrested her and denied her medical attention and accommodation in violation of the Fifth and Fourteenth Amendments. *Id.* at ¶¶ 84–86, 91–93, 97–99. Finally, Plaintiff claims that Defendants' actions caused her to suffer excruciating pain, an unnecessary worsening of her condition, life threatening complications, and severe emotional distress, and that Defendants engaged in actual malice and deliberate indifference and disregard to Plaintiff's constitutional rights. *Id.* at ¶¶ 80–81, 87–88, 100–01.

 Defendants Pechnick, E. Brown, and Phillips raise qualified immunity as a defense to Plaintiff's claims of Fourth, Fifth, and Fourteenth Amendment violations while she was a pretrial detainee. As discussed in *Young v. City of Mt. Ranier*, 238 F.3d 567 (4th Cir.2001), "the substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct." *Id.* at 574 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Normally, "[o]nly governmental conduct that 'shocks the conscience' is actionable as a violation of the Fourteenth Amendment." *Id.* However, action " 'falling within the middle range' of culpability—that is, conduct that is more than negligent but less than intentional—can give rise to liability under the Fourteenth Amendment." *Id.*

 In *Young*, the plaintiffs alleged that the defendants were "deliberately indifferent" to their son's medical needs and that they "failed to protect" their son "from a known and substantial risk of

harm while he was in their custody." *Id.* In that case, the Fourth Circuit concluded that the plaintiffs' claims fell within the limited "middle range" of culpability because deliberate indifference "is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." *Id.* The *Young* court found that pretrial detainees are afforded the same constitutional protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment, *id.* (citing *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)), and that thus, "deliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause." *Id.; see also Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999); *Belcher v. Oliver,* 898 F.2d 32, 34 (4th Cir.1990).

Like the situation in *Young,* Plaintiff's due process claims can be analyzed under the Eighth Amendment standard. *See Patten v. Nichols,* 274 F.3d 829, 834 (4th Cir.2001); *Grayson,* 195 F.3d at 695; *Mitchell v. Aluisi, et al,* 872 F.2d 577, 581 (4th Cir.1989). In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court outlined the parameters of an Eighth Amendment violation, i.e., "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton' infliction of pain." *Id.* at 104, 97 S.Ct. 285 (citing *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion)). The Supreme Court has articulated the test for deliberate indifference to be that "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Grayson,* 195 F.3d at 695 ("In order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective."); *White, et al. v. Chambliss, et al.,* 112 F.3d 731, 737 (4th Cir.1997) ("A claim of deliberate indifference . . . implies that at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice").

■ Because Plaintiff has failed to establish a constitutional violation under the Eighth Amendment, the Court must grant summary judgment to Defendants Pechnick, E. Brown, and Phillips. First, the pain described in Plaintiff's amended complaint does not rise to the level of a serious medical need. Second, even if Plaintiff had shown such a need, she has not alleged that Defendants actually knew of and ignored her serious need for medical care. *White, et al.,* 112 F.3d at 737. Although Plaintiff walked with a cane and carried a neck brace, it does not follow that Defendants drew the inference that a substantial risk of serious harm existed. *See Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. In fact, Plaintiff told Defendants that there was "something wrong with her hip," but while at her home and in the presence of Defendants Lewis and Pechnick, she walked without a cane and without a noticeable limp. Incident Report, Ex. 3. In her amended complaint, Plaintiff posits that she had disability papers documenting her medical condition. Pl.'s Am. Comp. ¶ 33. However, it does not follow that during the officers' routine booking of Plaintiff they would have reviewed those materials and thereby become aware of a risk of serious medical need—especially when there is no indication that Plaintiff notified the Defendants of the documentation.

In her amended complaint Plaintiff claims that during the arrest, Defendant Pechnick noted Plaintiff's three scars and said that they were "nothing, they will go away." Shortly thereafter, Plaintiff contends that she told Defendant Pechnick that "she needed her neck brace and medication to alleviate pain and muscle spasms" but that Defendant Pechnick refused to return those items to her. Pl.'s Am. Compl. ¶¶ 33, 35. Plaintiff's complaints to Defendant Pechnick of pain and muscle spasms do not provide objective evidence from which he would infer that a serious medical need existed. Pechnick Aff., Ex. B; *see also* Off. of the County Sheriff, General Operational Procedures, Ex. 5 at 10–11 (allowing administering of only medicine packaged by the Montgomery County Detention Center Medical Personnel).

Similarly, Plaintiff has failed to prove that Defendants E. Brown and Phillips were aware of a serious medical need. Plaintiff again contends that she was refused her medication and neck brace after being arrested, and that she was forced to limp painfully through the building while suffering back spasms. Pl.'s Am. Comp. ¶ 36. As with Defendant Pechnick, Plaintiff fails to state how Defendants E. Brown and Phillips could and did infer that a serious medical need was present.

Although not explicit in her amended complaint, Plaintiff also appears to argue that Defendants unlawfully arrested her because the state court had scheduled a hearing on her arrest warrant the day before she turned herself in to the Sheriff's Office. Because there was no deprivation of a constitutional right under the Fourth Amendment, Defendants' qualified immunity defense prevails as to these claims.

The Fourth Circuit has held that where a judge failed to recall an arrest warrant and a plaintiff was nonetheless arrested pursuant to the facially valid warrant, no constitutional violation occurred. *See Mitchell v. Aluisi*, 872 F.2d 577, 578 (4th Cir.1989); *cf. Baker v. McCollan*, 443 U.S. 137, 144–45, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (holding that absent an attack on a facially valid arrest warrant, a plaintiff has no constitutional claim if he was arrested despite protests of mistaken identity). At most, the *Mitchell* court found that the oversight was "nothing more than an act of negligence" and that "[d]efendants' conduct demonstrates at most a lack of due care." *Mitchell*, 872 F.2d at 578; *see also Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

In the case at hand, Plaintiff does not contest that the arrest was pursuant to a invalid arrest warrant. Rather, she contends that Defendants "knew or should have known that the District Court of Maryland for Montgomery County had indeed, on April 20, 2000, granted Plaintiff said opportunity to be heard." Pl.'s Am. Compl. ¶ 84–85, 91–92, 97–98. This oversight alone, however, does not rise to a level of constitutional violation. From all accounts, Defendants Lewis and Pechnick arrived at Plaintiff's home on April 19, 2000, pursuant to the outstanding valid arrest warrant. Plaintiff then came to the Sheriff's Office on April 21, 2000, and was arrested based on that same warrant. Even taking the facts in the light most favorable to Plaintiff, she has stated no constitutional violation, Defendants' qualified immunity defense as to these claims is properly evoked.

For the foregoing reasons, the Court will grant summary judgment to State Defendants Pechnick, E. Brown, and Phillips on Counts VI through VIII. As noted by the Fourth Circuit, "the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate

consequences." *Grayson,* 195 F.3d at 695–96. Because the Court finds that no constitutional right was violated, it is unnecessary to analyze the second step of the qualified immunity analysis, i.e., whether the constitutional right was clearly established. This brings me to the federal claims against the County Defendants.

### c. County Defendants

Plaintiff claims that Defendant Hicks violated her Fourth, Fifth, and Fourteenth Amendment rights because Defendant Hicks had knowledge of Plaintiff's medical condition and information about her request for another hearing. Pl.'s Am. Compl. ¶ 109. Plaintiff next claims that Defendant Hicks knew or should have known that the state court granted Plaintiff's request for a hearing and knew that Plaintiff had been searched while in the custody of the Sheriff's office. *Id.* ¶ 110. Plaintiff contends that despite Defendant Hicks's knowledge, that Defendant Hicks "with callous and deliberate indifference ... seized Plaintiff," unreasonably strip searched Plaintiff, and denied Plaintiff medical attention and accommodation. *Id.* ¶ 111. Finally, Plaintiff claims that Defendant Hicks's actions caused her to suffer excruciating pain, an unnecessary worsening of her condition, life threatening complications, and severe emotional distress, and that Defendant Hicks engaged in actual malice and deliberate indifference and disregard to Plaintiff's constitutional rights. *Id.* ¶¶ 113–14. With the exception of the unreasonable strip search, Plaintiff alleges the same claims against Defendant Andrews in his violation of Plaintiff's Fifth and Fourteenth Amendment rights. *Id.* ¶¶ 116–21. As with the State Defendants, a qualified immunity defense is appropriate, and the Court therefore will grant summary judgment to Defendants Hicks and Andrews on Counts X and XI.

Plaintiff has failed to demonstrate that her Fourth, Fifth, and Fourteenth Amendment rights were violated by Defendant Hicks. As discussed above, the State Defendants' arrest of Plaintiff did not violate the Fourth Amendment. Regardless, as an employee of the Montgomery · County Detention Center (MCDC), Defendant Hicks was not responsible for Plaintiff's arrest, but was required to process Plaintiff as a pretrial detainee at the MCDC. County Defs.'s Mot. to Dismiss at 19. In addition, Plaintiff fails to allege how Defendant Hicks's handcuffing Plaintiff during the booking procedure led to injury, let alone constitutional violation. In short, Plaintiff's arguments that Defendant Hicks denied Plaintiff her right to be heard and brutally handcuffed her amount to nothing more than bald allegations.

Plaintiff also fails to demonstrate that the strip search administered by Defendant Hicks was unconstitutional under the Fourth Amendment. In the Fourth Circuit, "[s]trip searches of detainees are constitutionally constrained by due process requirements of reasonableness under the circumstances .... Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Logan v. Shealy, et al.,* 660 F.2d 1007, 1013 (4th Cir.1981) (citing *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)); *see also Amaechi v. West, et al.,* 237 F.3d 356, 363 (4th Cir.2001).

Defendant Hicks and Plaintiff differ as to whether a strip search occurred. *See* Hicks Aff., County Defs.'s Ex. 1, at ¶ 4; Turner Aff. ¶ 31. Defendant Hicks claims that she did not search Plaintiff at all, while Plaintiff claims that Defendant Hicks required Plaintiff to show Defendant Hicks her breasts and bottoms of her feet and to remove her underwire bra. *See* Hicks

Aff., County Defs.'s Ex. 1, at ¶ 4; Turner Aff. ¶ 31. Even taking the facts in the light most favorable to Plaintiff and assuming a strip search did occur, Plaintiff's allegations do not amount to a constitutional violation. Defendant Hicks and Plaintiff are of the same gender, the search was in private and preceded Plaintiff's mandatory shower, and there was no physical contact between Hicks and Plaintiff. *See* Turner Aff. ¶ 31. In sum, it appears that Defendant Hicks acted reasonably under the circumstances and in accordance with the MCDC procedures for booking pretrial detainees. *See* MCDC Policy and Proc. Manual, at 6–7.

▇ Plaintiff also claims that Defendants Hicks and Andrews violated her constitutional rights by exhibiting deliberate indifference to her medical needs. However, the facts presented show no serious medical need, nor deliberate indifference on the part of Defendants Hicks and Andrews. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Rather, as with the State Defendants, Plaintiff complained about her pain and requested her medication, but "she did not have any problems walking or moving about." Hicks Aff., Ex. 1 at ¶ 7; Andrews Aff., Ex. 2 at ¶ 5 ("Ms. Turner did not appear to be suffering from any life-threatening medical condition which would have warranted medical personnel to respond immediately."). As corrections officers, Defendants Hicks and Andrews are not permitted to dispense medication, as such determinations are made by medical personnel pursuant to MCDC policy. However, in response to Plaintiff's complaints, Defendant Hicks called the MCDC medical staff to advise them of Plaintiff's situation. *Id.* at ¶ 7. Because the situation was not an emergency, the medical staff did not respond immediately. *Id.* at ¶ 7; *cf. Williams v. Dehay,* 81 F.3d 153, 1996 WL 128422 (4th Cir.1996) (finding no deliberate indifference where nurse complied with policy, consulted with warden about Plaintiff's request for narcotics, and refused to dispense narcotics without the required court order). Plaintiff was detained at MCDC for less than six hours, and she did not receive medical attention in the meantime. *See Kane v. Hargis et al.,* 987 F.2d 1005, 1009 (4th Cir.1993) (finding no unconstitutional denial of medical treatment for pretrial detainee who was in custody only for four hours and suffered cracked teeth, a cut nose, and a bruised face); *Martin v. Gentile, et al.,* 849 F.2d 863, 871 (4th Cir.1988) (finding "no serious medical needs," and hence no constitutional violation, of pretrial detainee who had cut over one eye, a quarter-inch piece of glass in palm, and bruises on shoulders and elbows for fourteen hours before given treatment). Contrary to Plaintiff's arguments, Defendants Hicks and Andrews did not demonstrate deliberate indifference to her medical needs. Not only did Plaintiff not have a serious medical need, but Defendants did not exhibit deliberate indifference to her situation. On the contrary, Defendant Hicks alerted the appropriate medical personnel of Plaintiff's situation and handled the short-term pretrial detainee appropriately.

Based on the above, summary judgment is granted to Defendants Pechnick, E. Brown, Phillips, Hicks, and Andrews on Counts VI, VII, VII, X, and XI.

### 3. County Liability

▇ In Count XII, Plaintiff also claims liability on the part of Montgomery County. Under 42 U.S.C. § 1983, a county cannot be held liable under respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, Plaintiff must allege that the County was a

participant in the alleged constitutional violations. However, Plaintiff has utterly failed to allege facts—e.g., related to County customs, policies, etc.—supporting this claim against Defendant County. The County cannot be held liable, and this Count must be dismissed.

### 4. State Claims

In light of the Court's ruling on the federal claims under 42 U.S.C. § 1983, the Court will decline to exercise its pendent jurisdiction over Plaintiff's remaining state claims in Counts XIII to XIX. A court may decline to exercise supplemental jurisdiction if all claims over which it has original jurisdiction have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995).

### *CONCLUSION*

Based on the foregoing, the Court will grant Defendants motions for summary judgment as to Counts I through VIII, and Counts X and XII. In addition, the Court will grant Defendants motions to dismiss as to Counts IX and XII, and will decline to exercise jurisdiction over the remaining counts (Counts XIII through XIX). In addition, the Court will grant Plaintiff's Motion to Excuse Late Filing, but will deny Plaintiff's Motion for Continuance to Permit Discovery. The Court will request that the Clerk of the Court close this case. An Order consistent with this Memorandum Opinion will follow.