**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1125

SHERRI A. TURNER,

Plaintiff - Appellant,

versus

RAYMOND M. KIGHT; BRUCE P. SHERMAN; RODNEY
BROWN; RICHARD KANE; ROBIN LEWIS; WILLIAM
PECHNICK; ERIC BROWN; BRIAN PHILLIPS;
ARTHUR M. WALLENSTEIN; T. L. HICKS; R.
ANDREWS; MONTGOMERY COUNTY, MARYLAND,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(CA-01-1408-AW-8)

Submitted: October 29, 2004        Decided: January 7, 2005

Before GREGORY and DUNCAN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

Ralph T. Byrd, Laytonsville, Maryland, for Appellant.  J. Joseph
Curran, Jr., Attorney General of Maryland, Cynthia G. Peltzman,
Assistant Attorney General, Baltimore, Maryland; Charles W.
Thompson, Jr., County Attorney, Sharon V. Burrell, Principal
Counsel for Self-Insurance Appeals, Patricia P. Via, Associate
County Attorney, Rockville, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Sherri A. Turner appeals the district court's dismissal of her complaint pursuant to 42 U.S.C. § 1983 (2000), on Defendants' summary judgment motions. For the reasons set forth below, we affirm.

Turner's action named State Defendants Sheriff Raymond M. Kight, Bruce P. Sherman, Rodney Brown, Richard Kane, Robin Lewis, William Pechnick, Eric Brown, and Brian Philips, as well as County Defendants Arthur M. Wallenstein, Theresa L. Hicks, Robert Andrews, and Montgomery County, Maryland. It alleged various federal constitutional claims arising out of Turner's arrest and detention by employees of the Montgomery County Sheriff's Office and the Montgomery County Department of Correction and Rehabilitation ("MCDC"). She alleged violations of her civil rights when she was taken into custody by the Sheriff's Department, after she failed to turn herself in, and based on events that occurred after she was transported to the MCDC. She sought, <u>inter</u> <u>alia</u>, compensatory damages of $5,000,000 and $10,000,000 in punitive damages.

Review of the record reveals the following facts, construed in the light most favorable to Turner. Turner suffered a spinal cord injury in 1997 from an unrelated automobile accident, and she occasionally uses a neck brace and takes medication to alleviate pain and muscle spasms. When she failed to appear on an arrest warrant on a charge of contempt of court, Sergeant Lewis and Deputy Pechnick of the Montgomery County Sheriff's Office went to Turner's home on April 19, 2000, to arrest her. Turner asserted

that Officers Lewis and Pechnick "stormed into [her] residence while [she] was in bed, terrifying [her] daughters." She asserted that Officer Lewis shouted orders to Turner and told her to "stop talking because she was going to jail" and that she "understood [Turner] and [Turner's] game." After hearing of her disability and verifying the information Turner provided with regard to previous calls she had made to the sheriff's department, the officers left without arresting her, giving her a third opportunity to turn herself in, which she did on April 21.

When Turner arrived at the Montgomery County Sheriff's Office with her fourteen-year-old daughter, Defendant Pechnick instructed Turner to leave her pocketbook and accompany him, which she did. She alleged that she was then "taken to a room, handcuffed to a table and arrested." Defendant Pechnick searched her and required her to surrender all her belongings, including her medicine and neck brace (which she carried but did not wear), copies of pleadings she had filed with the court, and documentation about her medical history. She alleged that Defendant Pechnick noted her three spinal surgery scars, and commented that the scars were "nothing, they will go away." Defendant Pechnick arrested Turner and transported her to a holding cell in the Montgomery County District Court.

Turner alleged that when she asked for her neck brace and medicine to alleviate pain and muscle spasms, Defendant Pechnick refused her request. She asserted that she was detained for four hours without any lunch, was in "excruciating pain and suffering

from muscle spasms and stiffness," and was once again denied her medication and neck brace.

Turner asserted that she was taken to a judge who refused to listen to her explanations and who required her to post a $100 bond, which she was unable to do at the time. She was then transported by Deputy Sheriffs Brown and Phillips to the MCDC. She claimed the officers refused to answer her inquiries regarding the welfare of her child, her right to a telephone call, her medicine, her tote bag with neck brace, an opportunity to see a doctor, and how she could be expected to arrange bail. She asserted she was made to sit without seatbelts facing a steel door and that the risk of trauma from any sudden stop caused her to suffer "paralyzing fear."

Turner claimed that when she arrived at the MCDC, she was again denied her medication and medical attention and was subjected to a "prolonged period of processing." She further asserted that she was strip searched[1] by Officer Hicks and then placed in a cell

---

[1]Turner was given an opportunity to use the bathroom, and while in the bathroom, Officer Hicks, a female, opened the door and told Turner that she was going to have to take a shower and put on jail clothes. Turner testified that she stood in a small area where she removed her clothes, with Officer Hicks standing nearby examining Turner's clothes and shoes as she removed them. Officer Hicks told Turner to "hurry up" and take her clothes off so she could shower. According to Turner, as she stood there naked, Officer Hicks said to her, "show me your breasts." While Turner was in the shower with the curtain closed, Officer Hicks brought her a towel, throwing it over the railing. No one other than Officer Hicks was present when Turner went into the shower stall, and when Turner exited the shower stall, no one else was in the room. Turner put on a jump suit that had been given to her, along with her shoes and socks. When Turner was unable to tell Officer Hicks whether she was wearing an underwire bra, Officer Hicks checked the bra by touching it to determine whether it had an

for six hours, during which time Defendants Hicks, Andrews, and Phillips "repeatedly taunted and mocked and denied [Turner] medical attention." Turner claimed she continued to experience uncontrolled pain, muscle spasms, and medication withdrawal symptoms,[2] and was taunted by Defendant Phillips, and finally released from MCDC at 9:30 p.m. when her daughter posted the $100 bail, approximately twelve and a half hours after she first arrived at the Montgomery County Sheriff's Office.

Finally, Turner contended that subsequent to her release, she wrote several letters complaining of the events. She asserted that Defendant R. Brown contacted her and "taunted, mocked and belittled" her. She stated that she received a letter from Defendant Sherman which stated that the matter would be investigated, but claimed that no corrective action was taken. She also claimed that she received a copy of a memorandum from a Montgomery County Council member to Defendant Wallenstein expressing concern about Turner's experience, but she was unaware whether any response was received from Defendant Wallenstein.

In her original and amended complaints, Turner asserted due process violations as a result of the policies, directives, and training condoned by Defendants Kight, Sherman, R. Brown, Kane,

---

underwire, and then ordered Turner to remove it for security reasons.

[2]Officer Hicks called the medical department to alert them to Turner's complaints, but Turner was released before she could be evaluated. Defendants asserted that Turner did not appear to be in any life-threatening medical situation warranting the immediate response of medical staff to the holding room.

Lewis, and Wallenstein and executed by their respective employees. She claimed that Defendants Pechnick, E. Brown, Phillips, Hicks, and Andrews violated her due process rights by arresting her without an opportunity to be heard, denying her medical attention, and causing her physical and emotional suffering. She further asserted that Montgomery County is liable for ratifying Defendants' acts and omissions in violating her constitutional rights. Finally, she asserted a number of state law claims.

The district court initially granted summary judgment for all Defendants, holding that Defendants were entitled to summary judgment on the issues of whether Turner was subjected to an unconstitutional strip search and denied necessary medical care, and further held that Turner failed to state a claim as to Defendants Wallenstein and Montgomery County. The district court then granted Turner's motion for reconsideration on the sole issue of the constitutionality of the alleged strip search and the constitutionality of Officer Hicks' conduct. Following review of the record, the pleadings, and the counter motions for summary judgment filed by Turner and Hicks, together with the supporting affidavits, the district court granted judgment in favor of Defendant Hicks. The district court later denied Turner's motion for reconsideration. Turner filed the present appeal.

Summary judgment is appropriate when there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "In determining whether to grant summary

judgment, all justifiable inferences must be drawn in favor of the non-movant." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990) (citing Anderson, 477 U.S. at 255). This Court reviews de novo a district court's grant of summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). To raise a genuine issue of material fact, the petitioner may not rest upon the mere allegations or denials of his pleadings. Fed. R. Civ. P. 56(e). Rather, she must present evidence supporting her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Turner's first two claims on appeal are that the district court erred when it ruled that her pain did not rise to the level of a serious medical need, and further erred in finding that, even if it did, Defendants did not deliberately disregard her serious medical need. She asserts these findings are not supported by the record that demonstrates that she told Defendants of her spinal injuries, used a cane, carried a neck brace, used handicapped transportation, carried prescription pain medication, and repeatedly requested her neck brace and medical accommodation, and Defendants refused her requests.

A serious medical need is one that poses a substantial risk of serious injury to health and safety. Young v. City of Mount Ranier, 238 F.3d 567, 576 (4th Cir. 2001). This Circuit has further defined "serious medical need" as a medical need "sufficiently serious . . . to require medical treatment."

Brice v. Virginia Beach Correctional Ctr., 58 F.3d 101, 104 (4th Cir. 1995).

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105 (1976). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d at 851. An Eighth Amendment violation occurs where treatment is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. at 851-52. While a pre-trial detainee's rights with respect to claims of deliberate indifference to serious medical needs are prohibited by the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment, with respect to such claims, a pretrial detainee's due process rights are co-extensive with a convicted prisoner's Eighth Amendment rights. Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992). Deliberate indifference is a high standard, requiring more than a showing of mere negligence. Young, 238 F.3d at 575-76.

We agree with the district court's dismissal of Turner's claims of deliberate indifference to serious medical needs. First, while Turner alleged that she endured pain and muscle spasms during her time at the Sheriff's Office and at MCDC, there is no evidence that this medical need was sufficiently serious as to require medical treatment, or that the failure to provide Turner with medical attention resulted in substantial injury. See generally

Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (in banc) (in excessive force case, de minimis injury does not state a viable constitutional claim). Second, there is no showing of deliberate indifference here which would "shock the conscience." Miltier v. Beorn, 896 F.2d at 851. While Turner informed several of the State Defendants that she was disabled, had been hospitalized for injuries, walked with a cane, carried a neck brace, notified Defendants that she had prescribed medication for chronic pain, and showed her surgical scars, there is no evidence that the Defendants specifically withheld Turner's medication and/or neck brace in an effort to deliberately or recklessly ignore an excessive risk to Turner's health. Farmer v. Brennan, 511 U.S. 825, 838 (1994). While Turner subjectively complained to several of the Defendants of pain, she was able to walk and move about. In addition, Officer Hicks called the medical department to alert them to Turner's complaints, but Turner was released before she could be evaluated. At best, the failure of the Defendants to provide Turner with her neck brace and/or pain medication could be construed as negligence, but such a claim is insufficient to establish liability under § 1983. See Young, 238 F.3d at 575-76.

Turner further asserts error in the district court's dismissal of her supervisory liability claims. Specifically, Turner claimed that employees of the Montgomery County Sheriff's Office, Deputies E. Brown, Pechnick, and Phillips, in arresting and detaining Turner, acted "pursuant to policies, directives, and training" instituted by Sheriff Kight, Assistant Sheriff Sherman,

and Deputies R. Brown, Kane, and Lewis (the "State Supervisory Defendants"). She further asserted that the State Supervisory Defendants had knowledge of their employees' conduct and were deliberately indifferent to purported constitutional injuries that resulted during Turner's arrest and detention. On appeal, Turner asserts the district court erred in dismissing these claims of supervisory liability, particularly because Defendants Pechnick, E. Brown, and Phillips signed sworn affidavits attesting that their actions regarding Turner were performed in compliance with Sheriff's office directives concerning the detention, care, and custody of prisoners. She further asserts error in the district court's dismissal of her claims against Defendants Wallenstein and Montgomery County.

Respondeat superior generally is inapplicable to § 1983 lawsuits. Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). To establish a viable claim for respondeat superior liability under § 1983, Turner must demonstrate: (1) actual or constructive knowledge of a risk of constitutional injury; (2) deliberate indifference to that risk; and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury she suffered. Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999) (quoting Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994)).

Here, we find that Turner has not provided evidence to establish a causal connection between a specific Sheriff's Office policy and a particular injury she suffered, a requisite proof

burden to a supervisory liability claim. Shaw v. Stroud, 13 F.3d at 791, 799 (4th Cir. 1994). As the district court held, Turner failed to allege facts to indicate actual or constructive knowledge of a risk of constitutional injury by Defendants Kight, Sherman, R. Brown, or Kane. While Defendant Lewis accompanied Defendant Pechnick to Turner's home lawfully to arrest her, and, while there, shouted orders to her and told her to "stop talking because she was going to jail and that she 'understood' [Turner's] game," the district court correctly determined that such language did not rise to the level of a constitutional injury.

Moreover, Turner has offered no evidence, other than her own, unsubstantiated assertions which are insufficient to overcome summary judgment,[3] that the State Supervisory Defendants had knowledge of any risk of constitutional injury posed by persons they supervised. Turner alleged no facts nor presented any evidence showing that the State Supervisory Defendants gave orders, set any policy, or failed to adequately train any of the deputies they supervised so as to lead to a constitutional injury to Turner. The fact that they supervised individuals who carried out Turner's arrest and detention in compliance with Sheriff's Office policies and procedures is insufficient, standing alone, to create liability under § 1983, absent a constitutional injury.

We further agree with the district court's dismissal of Turner's claims of supervisory liability on the part of Defendants Wallenstein, Director of the Department of Correction and

---

[3]See Mackey v. Shalala, 360 F.3d 463, 469-70 (4th Cir. 2004).

Rehabilitation, and Montgomery County.  Specifically, Turner failed to allege that Wallenstein had any personal knowledge or involvement in Turner's arrest, and her vague allegations that the MCDC employees acted under "policies, directives and training" that were "instituted, condoned, ratified and authorized" by Wallenstein are insufficient as a matter of law.  Her failure to demonstrate that Wallenstein had actual or constructive knowledge of the risk of constitutional injury, that he demonstrated deliberate indifference to that risk, or that his actions were causally related to injury suffered by Turner is fatal to her claim against him.  See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999).  Similarly, with regard to her claims against the County, because Turner failed to allege specific facts related to customs, policies, or procedures supporting a claim for violation of her constitutional rights, we find that the district court properly dismissed the claims.  See Monell, 436 U.S. 658.

Turner's next three claims of error involve the district court's determinations that Defendant Hicks' two affidavits were not contradictory, not an attempt to mislead the court, and not otherwise improper such that it should grant Turner's motion to strike the second affidavit.  The district court's determination of the right to present evidence is entitled to substantial deference and will not be reversed by this Court absent a clear abuse of discretion.  Sasaki v. Class, 92 F.3d 232, 241 (4th Cir. 1996).  Here, the district court expressly considered Turner's assertions that the second affidavit was inconsistent with the first and was

misleading, applied the factors as set forth in <u>Lowery v. Stovall</u>, 92 F.3d 219, 223 (4th Cir. 1996), and determined that Hicks' second affidavit provided clarity on points overlooked by the court, was not inconsistent with the first affidavit, and was not an attempt to mislead to court. We find no abuse of discretion shown on this record relative to the district court's decision to consider Hicks' second affidavit, or in its ruling to deny Turner's motion to strike Hicks' second affidavit.

Next, Turner challenges the district court's rulings as a matter of law that MCDC's shower and search policy distinguishes between temporary detainees and pretrial detainees and is not unconstitutional. Specifically, the district court held that "MCDC's strip search policy is not an indiscriminate search policy routinely applied to all detainees and is not unconstitutional." The district court found noteworthy the explicit provisions of Policy and Procedure 300-18, which clearly distinguish the search procedures to be followed for temporary detainees and those to be followed for pre-trial detainees. The court held that, pursuant to the provisions of the policy as well as the pleadings and affidavits of the case, Turner's status was that of a temporary detainee, and not a pre-trial detainee.

Turner has offered no evidence to support her position that the MCDC search policy is indiscriminately applied to all detainees. Aside from the fact that the policy was incorrectly applied to Turner, because the MCDC policy provides for explicit distinctions between search procedures permissible for temporary

detainees and those permissible for pre-trial detainees, and establishes parameters for those respective searches, we find that the district court properly determined that the policy is not indiscriminately and routinely applied to all detainees and does not thereby authorize unconstitutional actions.

Turner claims further that the district court erred in ruling, as a matter of law, that Defendant Hicks made a "reasonable mistake" when she forced Turner to submit to a search and shower as a temporary detainee. Following a review of relevant Fourth Circuit case law, the district court held that the intrusion in this case was minimal, did not include significant physical contact, and was conducted in private. The court also held that Defendant Hicks' negligence or carelessness in not confirming Turner's status prior to requiring Turner to take a shower and put on an MCDC uniform did not violate Turner's constitutional rights.

Mere negligence or carelessness by a correctional officer does not constitute a constitutional violation. See, e.g., Daniels v. Williams, 474 U.S. 327, 332 (1986). Here, there is no evidence supporting Turner's claim that the search and shower to which Hicks subjected her was anything more than an unfortunate mistake, which occurred when Defendant Hicks failed to confirm Turner's status prior to undertaking procedures to process her into the general population.

Finally, Turner argues that, assuming this Court remands the case to the district court, the district court should reconsider its denial of her motions for leave to file a second

amended complaint to include class action allegations, to certify class, and for extension of time to complete class action discovery. Given this court's disposition of this case on appeal, this argument is moot.

Accordingly, we affirm the district court's orders dismissing Turner's § 1983 complaint. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not significantly aid the decisional process.

<u>AFFIRMED</u>