**James BUECHLER, Plaintiff**

v.

**YOUR WINE & SPIRIT SHOPPE, INC., Defendant.**

**Civil No. JKB–11–3280.**

United States District Court, D. Maryland.

March 2, 2012.

Order Denying Reconsideration April 12, 2012.

David Hoskins, The Law Offices of E. David Hoskins LLC, Baltimore, MD, for Plaintiff.

Gina Marie Smith, Meyers Rodbell and Rosenbaum PA, Riverdale, MD, for Defendant.

### MEMORANDUM

JAMES K. BREDAR, District Judge.

Plaintiff James Buechler sued Defendant Your Wine & Spirit Shoppe, Incorporated ("YWWS"), for a claimed violation of the Electronic Fund Transfer Act

("EFTA"), 15 U.S.C. § 1693 *et seq.* (Compl., ECF No. 1.) Buechler alleged that YWWS was the operator of an automated teller machine ("ATM") and that it improperly charged a $2.00 fee for Buechler's withdrawal of funds from his bank account with a financial institution because YWWS failed to display on or about the ATM a notice that YWWS may charge a fee for an electronic fund transaction. (Compl:¶¶ 21, 24–28.) Pending before the Court is YWWS's motion to dismiss for failure to state a claim or, in the alternative, motion for summary judgment. (ECF No. 4.)

The only ground for dismissal for failure to state a claim is YWWS's argument that Buechler's complaint did not name the correct legal entity since he sued "Your Wine & Spirit Shoppe" rather than "Your Wine & Spirit Shoppe, Inc." (Def.'s Mot. Supp. Mem. 8.) Otherwise, YWWS argues it is entitled to summary judgment because no genuine dispute of material fact exists and it is entitled to judgment as a matter of law. The argument regarding the correct name of the legal entity to be sued was obviated by Buechler's filing of an amended complaint (ECF No. 6), which also contained other allegations regarding YWWS's response to the prelitigation request by Buechler for settlement. Treating YWWS's filing as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it will be denied as moot. Considering the filing as a motion for summary judgment, the motion will be granted. No hearing is necessary. Local Rule 105.6 (D. Md. 2011).

## I. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celo-* *tex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Iko v. Shreve,* 535 F.3d 225, 230 (4th Cir.2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed.R.Civ.P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## II. Undisputed Facts

Plaintiff Buechler made an electronic fund transfer on August 6, 2011, at an ATM owned by YWWS at its store in Woodstock, Maryland. (Def.'s Mot. Supp. Mem. 6; Am. Compl. ¶ 24, ECF No. 6.) Buechler did not hold an account with YWWS. (Am. Compl. ¶ 24.) Buechler was charged a $2.00 fee for the ATM transac-

tion. (*Id.* ¶ 26; Def.'s Mot. Supp. Mem. 6.) Before Buechler entered into the transaction, he took pictures of the ATM. (Am. Compl. Exs. 2, 3, & 4; Pl.'s Opp. 9–10, ECF No. 7.) At the time of Buechler's transaction, no notice was posted on or at the ATM indicating the $2.00 fee would be charged. (Def.'s Mot. Supp. Mem. 6; Am. Compl. ¶ 27.)

On August 23, 2011, his attorney, David R. Hoskins, Esquire, wrote a letter to YWWS, notifying it of the lack of required notice on or at the ATM and enclosing a draft complaint with a prayer for relief for actual damages of $1,000, statutory damages of $1,000; costs; and reasonable attorney's fees. (Am. Compl. Ex. 5.) The letter indicated the attorney was prepared to file the complaint within the following two weeks but was extending YWWS "the courtesy of reviewing the complaint before it is filed in order to provide the parties an opportunity to settle this matter without the need for litigation." (*Id.*)

In response, Douglas C. Meister, Esquire, counsel for YWWS, wrote a letter to Hoskins, dated September 2, 2011, informing him that the problem of the missing required fee notice had been remedied and enclosing a check payable to Buechler to reimburse him for the $2.00 fee charged. (*Id.* Ex. 6.) Meister further stated that, because YWWS had corrected the problem by posting the missing notice and by reimbursing Buechler for the amount he alleged he was damaged prior to Buechler's instituting suit, no one was liable pursuant to a "safe harbor" provision in EFTA. (*Id.*) *See* 15 U.S.C. § 1693m(e). Finally, Meister stated that filing a suit under these circumstances would constitute an act of bad faith or harassment. (Am. Compl. Ex. 6.) *See* 15 U.S.C. § 1693m(f). The instant suit was filed November 16, 2011.

## III. Analysis

Because the pertinent facts are undisputed, the only remaining issues in the case are whether YWWS is entitled to the "safe harbor" provision, 15 U.S.C. § 1693m(e), and whether this lawsuit was instituted in bad faith.

### A. EFTA's "safe harbor" provision

■ Under § 1693m(e),

> A person has no liability … for any failure to comply with any requirement under this subchapter if, prior to the institution of an action under this section, the person notifies the consumer concerned of the failure, complies with the requirements of this subchapter, and makes an appropriate adjustment to the consumer's account and pays actual damages or, where applicable, damages in accordance with section 1693h of this title.

YWWS argues that its September 2, 2011, letter to Hoskins fulfilled the requirements of this subsection and, therefore, YWWS is entitled to claim the protection of § 1693m(e). Buechler argues the § 1693m(e) provision does not apply for three reasons: (1) because it was intended only to apply to financial institutions holding customers' accounts, and YWWS, which is not a financial institution holding customers' accounts, is not protected by it; (2) because, even if the provision applied to YWWS, Defendant did not fully cure since (a) it cannot prove it made "an appropriate adjustment to the consumer's account" and (b) it cannot prove it paid Buechler his actual damages; and (3)· if the Court interprets § 1693m(e) in the manner urged by YWWS, "the result will be that no EFTA cases will ever be resolved through pre-suit settlement negotiations." (Pl.'s Opp. 17–24.)

Buechler recounts the history of EFTA, asserting that the original 1978 enactment

was focused exclusively on "financial institutions," as defined in § 1693a(8), and did not include any provisions relating to ATM notice requirements, which were enacted in 1999. (Pl.'s Opp. 18.) Although Congress's original intent in 1978 may have been to protect financial institutions from unwarranted liability when they respond appropriately to customer complaints of improper account charges, it chose not to limit § 1693m(e)'s protection to "financial institutions" by granting it, instead, to "a person," a term that surely includes, but is not limited to, "financial institutions." That this is the proper interpretation of § 1693m(e) is supported by reference to another section, which provides,

> If electronic fund transfer services are made available to consumers by a person other than a financial institution holding a consumer's account, the Bureau [of Consumer Financial Protection] shall by regulation assure that the disclosures, protections, responsibilities, and remedies created by this subchapter are made applicable to such persons and services.[1]

15 U.S.C. § 1693b(d)(1) (West 2009, Supp. 2011).[2]

Consequently, it would be contrary to Congressional intent, and certainly inequitable, to limit the "safe harbor" provision of § 1693m only to "financial institutions" and to disallow YWWS's reliance upon it.

Whether the Bureau of Consumer Financial Protection (or its predecessor, Board of Governors of the Federal Reserve System) has followed through on this Congressional mandate is not determinative of the scope of § 1693m(e). Therefore, the Court holds § 1693m(e) properly includes within its scope a person, other than a financial institution holding a consumer's account, who makes electronic fund transfer services available to consumers.

 The next argument by Buechler is that YWWS did not cure according to § 1693m(e)'s requirements. As set forth in that subsection, a person has no liability for a failure to comply with EFTA if, before litigation is commenced, the person (1) notifies the consumer concerned of the failure, (2) complies with the requirements of EFTA, and (3) "makes an appropriate adjustment to the consumer's account and pays actual damages."[3] Buechler does not dispute YWWS's compliance with the first and second elements of § 1693m(e), but argues YWWS did not comply with the third element. His argument on this point is twofold: one, YWWS is not a financial institution holding his account and therefore is incapable of making an adjustment to his account; and two, it failed to pay his actual damages. Based on the Court's prior holding that the protection afforded by § 1693m(e) is not limited to financial institutions, but is also available to persons

---

1. The current wording, enacted in 1996 and amended in 2010, of this portion of the statute varies only slightly from the original 1978 statute and that slight variance does not affect the Court's analysis. *Compare* Pub. L. 95–630 § 904(d) *with* Pub. L. 104–193 §§ 891, 907.

2. In fact, the section that establishes civil liability for violations of EFTA imposes liability on "any *person* who fails to comply with any provision of" EFTA. 15 U.S.C. § 1693m(a) (emphasis added). Congress chose the broader word "person" rather than the narrower term "financial institution" to

define who could be held liable and employed the same terminology in providing protection from liability. It would be strange if Congress meant "person" in § 1693m(a) to include ATM operators who were not also financial institutions holding consumers' accounts but meant "person" in § 1693m(e) to exclude them.

3. Where applicable, a person who is a financial institution must pay damages according to § 1693h rather than "actual damages" as specified in § 1693m(e).

such as YWWS, Buechler's first argument is unconvincing. Congress does not specify how an adjustment is to be made to a consumer's account and does not require that an adjustment only be accomplished by a financial institution making a book-keeping entry that results in a credit to a consumer's account. Although it is true that YWWS has no direct access to Buechler's account, it accomplished the purpose of the statute by sending a check to Buechler to reimburse him for the $2.00 fee. Buechler could then deposit the check in his account, and the effect would be the same as though the bank had credited his account. Thus, YWWS satisfied the statute insofar as it required YWWS to make an appropriate adjustment to Buechler's account.

■ Buechler's second argument on compliance with the statute is that YWWS did not pay him his actual damages because it "ignored the claim for actual damages set forth in the draft complaint forwarded to the Defendant on August 23, 2011." (Pl.'s Opp. 21.) The language employed by Buechler in the draft complaint was somewhat ambiguous. Within the body of the draft complaint was the following allegation:

> Plaintiffs [sic] sustained actual damages as the result of the Defendants' failure to comply with EFTA including damages for inconvenience, legal fees, loss of the use of funds and pre-judgment interest.

(Am. Compl., Ex. 5, ¶ 33.) Then, without accounting for how he arrived at this figure, Buechler's prayer for relief asked for "[a]n award of actual damages of $1,000.00." In the demand letter, Buechler did not quantify for YWWS's benefit

how much actual damage he sustained as to each of these items, which somehow added up to the round figure of $1,000.00. It is not surprising that YWWS considered only Buechler's claim of actual damages of $2.00 for the ATM fee to be substantiated.

Because this case is now before the Court on a motion for summary judgment, it was incumbent on Buechler to provide proof of his actual damages. This he has not done. He has claimed only that it is a jury question but, in so doing, has relied upon his allegations rather than admissible evidence. Thus, he has failed to show he had actual damages for which YWWS did not compensate him. As a consequence, he has failed to rebut YWWS's evidence that it complied with the requirements of § 1693m(e).

Buechler's last argument as to why YWWS cannot be protected by § 1693m(e) is a curious one:

> [E]very violation will result in a lawsuit being filed to avoid the tactic adopted by Defendant's counsel in this case. This approach will needlessly increase the costs of litigation to consumers and ATM operators (who ultimately will be required to pay not only their attorney's fees and costs but also the attorney's fees and costs of the consumer) and needlessly add cases that can easily be resolved through good faith pre-suit settlement negotiations to the already overcrowded District Court docket.

(Pl.'s Opp. 24.)

The notion that every improperly imposed ATM fee will result in a lawsuit is clearly speculative if not farfetched. Perhaps, people like Buechler who are prone to litigation[4] will perceive it to be in their

---

4. *See, e.g., Buechler v. Money Box, Inc.,* Civ. No. BEL–11–2649 (D.Md.) (allegedly improper ATM fee); *Buechler v. Kearney Federal Savings Bank,* Civ. No. MJG–11–2652 (D.Md.) (same); *Buechler v. Hillmark Corp.,* Civ. No. MJG–11–3282 (D.Md.) (same); *Buechler v. Singh,* Civ. No. CCB–11–3283 (D.Md.) (same); *Buechler v. Fager's Island, Ltd.,* Civ. No.

best interest to file suit rather than to seek informal resolution of the problem. But Buechler's claim that all consumers who are incorrectly charged ATM fees will choose to resolve such matters through litigation is supported by neither evidence nor authority. If the objective is only reversal of the fee and reimbursement for actual damages proximately caused by imposition of the fee, then no compelling reason exists not to use avenues outside of litigation to achieve that objective. He does not argue, and logically could not, that "good faith pre-suit settlement negotiations" are undesirable to a consumer in the event an improper ATM fee is imposed by a financial institution holding consumers' accounts. But Buechler nevertheless illogically posits that "good faith pre-suit settlement negotiations" will somehow become undesirable to consumers if ATM operators other than financial institutions holding consumers' accounts are provided the protection of § 1693m(e). Why prelitigation settlement negotiations conducted in good faith should not be desirable in all cases is left unexplained by Buechler's argument. Although it would not be unreasonable for Congress to require consumers to seek informal resolution of improperly imposed ATM fees before initiating federal litigation, it has not yet chosen to do so. At this point, it is up to the consumer whether to seek resolution outside of formal litigation, but presumably, the consumer's judgment will be informed by good sense and good faith.

Another point deserves comment. Buechler's argument necessarily faults "the tactic adopted by Defendant's counsel in this case." (Pl.'s Opp. 24.) He apparently refers to the prompt response by defense counsel and reimbursement of the improper $2.00 ATM fee, along with acknowledgement of the missing notice and notification that the problem of proper notice had been remedied. This "tactic" seems a reasonable response to the facts made known to YWWS, and the Court finds no fault with it.

In the end, Buechler is asking the Court to disregard established canons of statutory construction, which rely upon the plain meaning of the statute, in order to arrive at a strained interpretation of § 1693m(e)'s "safe harbor" provision, and the rationale advanced by Buechler is couched as a policy argument. He cites no authority for the proposition that a policy argument should trump the plain and logical meaning of a statute. In reality, Buechler's argument is an implicit threat of future litigation if the statute is not interpreted in Buechler's favor and, as such, is improper.

Considering all of these arguments by Buechler, the Court finds them to be without merit. Thus, based on the evidence before it, the Court concludes that YWWS may properly claim the protection from liability offered by § 1693m(e). Accordingly, summary judgment will be granted to Defendant YWWS.

## B. Bad faith

EFTA includes a provision relating to suits brought in bad faith:

> On a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1693m(f).

The bad faith contention here is not entirely unreasonable. However, the case

RDB–12–459 (D.Md.) (same); *Buechler v. Empire ATM, LLC,* Civ. No. BEL–12–465 (D.Md.) (same).

did present unresolved questions regarding the scope of § 1693m(e), so, the better exercise of discretion is not to find Buechler's case was brought in bad faith or for purposes of harassment. Accordingly, no basis exists to award YWWS its attorney's fees.

## IV. Conclusion

Defendant YWWS has demonstrated this case presents no genuine dispute of material fact and it is entitled to judgment as a matter of law. A separate order will issue.

### ORDER

In accordance with the foregoing memorandum, it is hereby ORDERED:

1. Defendant's motion to dismiss for failure to state a claim (ECF No. 4) is DENIED AS MOOT;

2. Defendant's motion for summary judgment (ECF No. 4) is GRANTED;

3. Judgment is ENTERED for Defendant;

4. The Court FINDS Plaintiff did not bring this lawsuit in bad faith or for purposes of harassment and DENIES Defendant's request for attorney's fees;

5. The Clerk shall CLOSE the case.

### MEMORANDUM AND ORDER

Pending before the Court is Plaintiff James Buechler's motion for reconsideration (ECF No. 12) of the Court's order of March 2, 2012 (ECF No. 11), which granted summary judgment for Defendant, Your Wine & Spirit Shoppe, Inc. ("YWWS"). The Court has considered YWWS's opposition (ECF No. 13) and Buechler's reply (ECF No. 14). No hearing is necessary. Local Rule 105.6 (D. Md. 2011). The motion will be denied.

As the Fourth Circuit has pointed out, "The Federal Rules of Civil Procedure do not provide for a postjudgment 'motion for reconsideration.' Rather, they provide for a Rule 59(e) motion to alter or amend the judgment or a Rule 60(b) motion for relief from judgment." *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 470 n. 4 (4th Cir.), *cert. denied,* —— U.S. ——, 132 S.Ct. 115, 181 L.Ed.2d 39 (2011). Buechler has brought his motion pursuant to Rule 59(e) by claiming the Court's judgment was a clear error of law. (Pl.'s Mot. 2.) The Fourth Circuit has iterated the standard for consideration of a Rule 59(e) motion to alter or amend a judgment:

> Although Rule 59(e) does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment, we have previously recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. Thus, the rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance. Similarly, if a party relies on newly discovered evidence in its Rule 59(e) motion, the party "must produce a 'legitimate justification for not presenting' the evidence during the earlier proceeding." In general "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."

*Pacific Ins. Co. v. American Nat. Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998) (citations omitted). Buechler has claimed only the third alternative as the basis for his motion, i.e., to correct a clear error of law.

The first ground for Buechler's motion is his assertion that YWWS's motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 4) was mooted by Buechler's filing of an amended complaint (ECF No. 6). As noted in the Court's March 2 order, the only ground stated in YWWS's motion for dismissal under Federal Rule of Civil Procedure 12(b)(6) was Buechler's failure to name the correct legal entity in his complaint, and this objection was resolved by the filing of the amended complaint; thus, in treating the motion as one seeking to dismiss for failure to state a claim, the Court appropriately denied the motion as moot. This is in keeping with the established precept that an amended pleading ordinarily supersedes an earlier pleading and renders it of no further legal effect. *See Young v. City of Mt. Ranier,* 238 F.3d 567, 572 (4th Cir.2001).

■ However, the motion was not limited to Rule 12(b)(6). It was also brought under Rule 56, seeking summary judgment. And YWWS's motion for summary judgment was not mooted by Buechler's amended complaint because such a motion is not directed at the adequacy of a complaint's allegations but is instead focused on the merits of the substantive claim. This is explained in a popular treatise:

> [A]lthough a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted addresses itself to the claim itself, the movant merely is asserting that the pleading to which the motion is directed does not sufficiently state a claim for relief. Unless the motion is converted into one for summary judgment as permitted by the last sentence in Rule 12(b), it does not challenge the actual existence of a meritorious claim.

10A Charles Alan Wright *et al., Federal Practice and Procedure* § 2713, at 221 (3d ed. 1998) (footnote omitted). Contrarily, a "motion for summary judgment challenges the very existence or legal sufficiency of the claim or defense to which it is addressed." *Id.* § 2711, at 191.

Buechler cites two district court cases in which a motion to dismiss or, in the alternative, for summary judgment was denied as moot following the filing of an amended complaint. *See Turner v. Kight,* 192 F.Supp.2d 391 (D.Md.2002), *aff'd,* 121 Fed. Appx. 9 (4th Cir.2005); *Gay–Lesbian–Bisexual–Trangender Pride/Twin Cities v. Minneapolis Park & Recreation Bd.,* Civ. No. 10–2579 JRT JJG, 2011 WL 1300381 (D.Minn. Apr. 4, 2011). Those cases are unpersuasive. In the *Turner* case, the court was faced with two sets of motions to dismiss or, in the alternative, for summary judgment. One set was filed in response to the original complaint. Then, the amended complaint was filed and responded to the arguments made in the first set of motions. Another set of motions was filed after the amended complaint was filed. The first set was denied as moot. The opinion does not explain why filing of the amended complaint mooted the motions for summary judgment. It only recites the well-established principle that an amended pleading supersedes a prior version of the same pleading. 192 F.Supp.2d at 392. It may be that since the Court had before it a viable second set of motions, it was easier to deny the first set as moot and address the second set.

In the *GLBT Pride* case, the court cited the *Turner* case for the proposition that a motion for summary judgment on an original complaint is moot as a matter of law

when an amended complaint has been filed. 2011 WL 1300381, at *2. But it is also noted that the amended complaint in that case removed any references to the particular defendant who had filed the motion for summary judgment. *Id.* at *1–2. Thus, as to him, no case or controversy existed, and he was dismissed from the lawsuit. Neither the *Turner* case nor the *GLBT Pride* case provides a basis for reaching the conclusion that Buechler's amended complaint mooted YWWS's motion for summary judgment.

One further point as to the propriety of ruling on the motion for summary judgment deserves comment. Buechler argues that since, in his view, YWWS's motion became moot, the Court should have denied it without prejudice to refile. (Pl.'s Supp. Mem. 3.) Even if the motion were only a motion to dismiss, Wright's *Federal Practice* states:

> [D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. *To hold otherwise would be to exalt form over substance.*

6 Wright *et al.,* § 1476, at 638 (2010 ed.) (emphasis added). Buechler's suggested course of action would be a useless exercise and contrary to the notion of judicial economy. The Court properly addressed the motion for summary judgment on its merits.

Buechler's second ground for vacating the Court's judgment is that YWWS "failed to support its motion with affidavit evidence or other similar evidence." (Pl.'s Supp. Mem. 6.) He further faults the Court because it "appears to have relied on certain allegation from the Amended Complaint that support the Defendant's position to establish that the materials [sic] facts were not in dispute, while at the same time rejecting other allegations that, if proven, would establish that … 15 U.S.C. § 1693m(e) does not apply in this case." (*Id.*) Buechler's argument distorts what happened in this case. No material facts were in dispute. Because the factual allegations of Buechler's complaint pertaining to the defense of § 1693m(e) were not disputed by YWWS—as opposed to the complaint's legal conclusions or its claim for relief—it was appropriate to reach the issues of law. Buechler has failed to point out any facts regarded as undisputed in the Court's memorandum opinion that should have been deemed disputed, and the Court will not speculate as to where Buechler's disagreement lies. Moreover, the amended complaint had attached to it as exhibits the correspondence regarding the refund of the $2.00 ATM fee. The Court rightly accepted these exhibits as evidence before it in deciding the case since they were undisputed as authentic. Finally, and as the Court noted in its opinion, Buechler presented *no* evidence as to any actual damages beyond the $2.00 fee that was refunded to him. Yet, Buechler faults YWWS because it did not produce admissible evidence establishing the amount of actual damages he claims to have suffered, besides the $2.00 fee. (*Id.* 7.) Since the only evidence of actual damage before the Court was the $2.00 fee, and since any other evidence of actual damage was not shared with the Court but kept exclusively within Buechler's possession, it makes no sense to fault YWWS for not producing it. The Court notes that, belatedly, Buechler provided as an attachment to the instant motion his affidavit stating he spent $5.40 in postage; in addition, he states he "spent approximately one hour organizing the materials, drafting correspondence to [his] attorney, photo-

copying the materials, and mailing them to [his] attorney." (Pl.'s Mot., Ex. 2, Buechler Aff. ¶¶ 3 & 4.) He provides no legitimate justification why he did not provide this affidavit in his opposition to the motion for summary judgment. The Court finds no basis in it for vacating its judgment.[1]

Last, Buechler argues that the Court erred because it required him "to disprove an element of the affirmative defense." (Pl.'s Supp. Mem. 8.) This is essentially the same point addressed by the Court in response to his second asserted ground for relief. At no point did the Court place upon Buechler a burden of proof with regard to YWWS's affirmative defense. Had other evidence existed as to actual damages and been presented to the Court, then this case would have been in a different posture. But no such evidence existed as far as the Court was concerned. And the Court regards as specious Buechler's assertion that the Court "should have provided the Plaintiff the opportunity to provide an affidavit addressing the actual damages incurred" (*id.*), which implies the Court denied him the opportunity to do so. This case was before the Court on a motion for summary judgment, and Buechler had an opportunity that he did not take to present evidence to the Court. He was never denied an opportunity to present any evidence he deemed worthy of the Court's consideration.

Buechler's motion is without merit and is, therefore, DENIED.

---

[1]. Presumably, Buechler did not charge himself for his time, so it is unclear how his one hour of time is an item of damage, but it is unnecessary to reach that issue.